SETH E. PIERCE (SBN 186576) sep@msk.com
AARON M. WAIS (SBN 250671) amw@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

NAOMI STRAUS (SBN 287804) nxs@msk.com
181 N Street N.W., 8th Floor
Washington, DC 20036
Telephone: (202) 355-7900
Facsimile: (202) 355-7899

Attorneys for Plaintiff
Lear Capital, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAR CAPITAL, INC.,<br><br>                 Plaintiff,<br><br>        v.<br><br>REGAL ASSETS, LLC; Tyler Gallagher, an individual; Kelly Felix, an individual; and Does 1-10, inclusive.<br><br><br>                 Defendants. | CASE NO. 2:15-cv-00869<br><br>**COMPLAINT FOR:**<br><br>**(1) TRADEMARK INFRINGEMENT [15 U.S.C. § 1114];**<br>**(2) FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125(a)]**<br>**(3) FALSE OR MISLEADING ADVERTISING [15 U.S.C. § 1125(a)]**<br>**(4) FALSE OR MISLEADING ADVERTISING [CAL. BUS. & PROF. CODE § 17500 *et seq*];**<br>**(5) UNFAIR COMPETITION [CAL. BUS. & PROF. CODE §17200 *et seq* AND COMMON LAW];**<br><br>**DEMAND FOR JURY TRIAL** |

Mitchell
Silberberg &
Knupp LLP

6240397.3

1    Plaintiff Lear Capital, Inc. ("Lear" or "Plaintiff"), by its attorneys, alleges as

2  follows:

3

4  ## NATURE OF THE ACTION

5    1.    Lear and defendant Regal Assets, LLC ("Regal") compete head-to-

6  head in selling precious metals to the public for investment or collecting purposes.

7  Upon information and belief, Regal, its owner, defendant Tyler Gallagher

8  ("Gallagher") and its owner/marketing director/marketing consultant, Kelly Felix

9  ("Felix") (Gallagher and Felix collectively are the "individual Defendants" and

10  together with Regal are "Defendants"), among other things, have created and are

11  operating a false, misleading and disparaging advertising campaign that is designed

12  to mislead the public and divert business from Lear to Regal.

13    2.    Upon information and belief, through the guise of a purported affiliate

14  program, Defendants are creating, directing, controlling, aiding and abetting,

15  knowingly allowing and benefitting from the saturation of the internet with false

16  and deceptive promotional websites, videos and other content (the "Regal Sites"),

17  which employ a variety of unscrupulous tactics to divert business away from

18  Regal's competitors, including Lear, and to Regal.

19    3.    The Regal Sites portray themselves as neutral, independent websites

20  operated by qualified professionals in the relevant fields of precious metals,

21  investing, and retirement planning, before proceeding to "independently review"

22  Regal and Lear (among others).  But upon information and belief, the reality is far,

23  far different.  The sites are not independent, but run by Regal's sales agents with

24  Regal's assistance and under its direction.  And the "reviews" are biased; Lear and

25  Regal's other competitors are denigrated, while Regal is lauded and recommended.

26    4.    In furtherance of this deception, upon information and belief, the

27  Regal Sites use fake names, stock photos, and fabricated credentials to give the

28  sites false credibility and an aura of independence.  The Regal Sites, moreover,

1  repeatedly mislead the public as to the source of their reviews and their

2  independence by failing to disclose or not adequately disclosing the material

3  relationship between Regal (the principal) and the website owner and operator (the

4  agent), before panning the competition and recommending Regal.

5        5.     Finally, upon information and belief, the Regal Sites themselves

6  infringe Lear's federal registered trademark by presenting Lear's trade name and

7  logo on the sites and deceiving consumers into believing that if the consumer

8  clicks on the logo, he or she will be directed to Lear when, in reality, the click-

9  through leads the consumer to Regal.

10        6.     All of the foregoing is done in a transparent effort to promote and

11  advertise Regal and disparage its competitors, including Lear, with the goal of

12  harming Lear's reputation and goodwill and also diverting sales from Lear to

13  Regal.

14        7.     Defendants' actions are knowing, willful, and malicious.  They have

15  caused, and are continuing to cause, severe and irreparable damage to Lear.

16  Accordingly, Lear is entitled to relief under the Lanham Act and California law,

17  including injunctive relief, compensatory damages, Defendants' unjust profits,

18  treble damages, and attorney's fees and costs.

19

20  **JURISDICTION AND VENUE**

21        8.     This Court has subject matter jurisdiction over this matter pursuant to

22  15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b) in that it involves an

23  action for trademark infringement pursuant to 15 U.S.C. § 1114, as well false

24  designation of origin and false advertising under the Lanham Act, 15 U.S.C.

25  §§ 1501, *et seq.*

26        9.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367

27  over those claims of Lear that arise under the laws of the State of California

28  because they are so related that they form part of the same case or controversy.

Mitchell
Silberberg &
Knupp LLP

6240397.3

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

10. Defendants are subject to personal jurisdiction in the State of California because the unlawful conduct complained of herein causes injury in this judicial district; upon information and belief, Regal is a California Corporation with its principal place of business in California; upon information and belief, the individual Defendants are residents of the State of California; and Defendants transact business and offer their services for sale in this judicial district.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to this Complaint occurred in this judicial district; upon information and belief, Regal has its principal place of business in this judicial district and Gallagher resides in this judicial district; and Defendants do business in this judicial district.

## **THE PARTIES**

12. Lear is a California Corporation with its principal place of business in Los Angeles, California.

13. Lear is informed and believes, and on that basis avers, that at all times relevant herein, Regal is and was a California Limited Liability Company with its principal place of business in Burbank, CA.

14. Lear is informed and believes, and on that basis avers, that at all times relevant herein, Gallagher is and was an individual residing in Los Angeles County, California and is the Chief Executive Officer and an owner of Regal.

15. Lear is informed and believes, and on that basis avers, that Felix is and was an individual residing in San Diego County, California, is an owner, marketing director, marketing consultant and/or agent of Regal, as well as the owner, operator, and creator of (a) certain Regal Sites, including but not limited to http://imfsite.org, and (b) affiliate recruiting websites, including but not limited to www.btfgold.com, through which he solicits "affiliates" for Regal.

Mitchell
Silberberg &
Knupp LLP

6240397.3

3

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

16.     Lear is informed and believes, and on that basis avers, that at all times herein mentioned there existed a unity of interest and ownership between Regal, on the one hand, and the individual Defendants, on the other hand, such that any individuality or separateness between them ceased.  The individual Defendants were and are the alter egos of Regal and, at all times herein mentioned, Regal has been the mere shell, instrumentality, and conduit through which the individual Defendants have carried on business, exercising complete control over Regal to the extent that any individuality or separateness of Regal does not exist.

17.     Lear is further informed and believes that at all times herein mentioned, each defendant was the agent, aider and abettor, and/or co-conspirator of one or more of the other defendants, was acting within the course and scope of the agency and/or in furtherance of such conspiracy, and aided and assisted one or more of the other defendants in committing the wrongful acts alleged herein, and is liable to Lear as alleged herein not only directly but also vicariously for the acts of their agents and co-conspirators.

18.     Lear is further informed and believes that at all times herein mentioned, each member of Regal's affiliate program and owner/operator of the Regal Sites was the agent and/or co-conspirator of one or more of the other defendants, and was aided and abetted by one or more of the other defendants. Lear is further informed and believes that at all times herein mentioned, each member of Regal's affiliate program and owner/operator of the Regal Sites was acting within the course and scope of the agency and/or in furtherance of such conspiracy, and was aided and abetted by one or more of the other defendants in committing the wrongful acts alleged herein; as such, Defendants are liable to Lear as alleged herein not only directly liable but also vicariously for the acts of these agents and co-conspirators.

19.     Lear is unaware of the true names or capacities of the defendants sued herein under the fictitious names Does 1 through 10, inclusive.  Lear is informed

1    and believes, and on that basis avers, that Does 1 through 10, and each of them,

2    either directly performed the acts alleged herein or were acting as the agent,

3    principal, alter ego, employee, representative, or otherwise participated in the acts

4    alleged herein with Defendants.  Accordingly, defendants Does 1 through 10 are

5    each liable for all of the acts alleged herein because they were the cause in fact and

6    proximate cause of all injuries suffered by Lear as alleged herein and defendants

7    are not only directly liable, but vicariously liable for the acts of these Doe

8    defendants.  Lear will amend the Complaint to state the true names of defendants

9    Does 1 through 10 when their identities are discovered.

10

11    **<u>GENERAL ALLEGATIONS</u>**

12    **<u>Lear's Business, Trademark and Reputation</u>**

13         20.     For years, Lear has been and is a trusted leader for selling gold and

14    other precious metals for placement in customer investment accounts (including

15    "IRAs") or for collecting purposes.

16         21.     Lear promotes itself nationally using the trade name LEAR

17    CAPITAL.  While Lear has gained significant common law trademark and other

18    rights in its LEAR CAPITAL mark through its continuous use, advertising and

19    promotion of LEAR CAPITAL, Lear also has protected its valuable rights by filing

20    for and obtaining a federal trademark registration for its LEAR CAPITAL mark.

21         22.     Lear owns the trademark "LEAR CAPITAL®," which is registered on

22    the Principal Register of the United States Patent and Trademark Office (Reg. No.

23    3696663) for "G&S: Gold, silver, platinum, palladium and numismatic coins and

24    bars brokerage services, gold individual retirement accounts."  The foregoing

25    registration is valid, subsisting and exclusively owned by Lear.

26         23.     Lear has invested enormous time, effort, and resources advertising

27    and promoting its high quality services under and in connection with its LEAR

28    CAPITAL® mark.  This includes investing enormous time, effort and resources

1   promoting and offering its services online.  To this end, Lear promotes and offers

2   its services through a website using the domain name www.learcapital.com.  It also

3   promotes and offers its services through various online advertisements, including

4   but not limited to placing video advertisements on various websites, including

5   YouTube.com.

6       24.    Lear also generates business and promotes itself through results

7   yielded by online search engines (i.e., Google, Microsoft Bing) in response to

8   queries from potential clients looking for precious metal services (e.g., a user will

9   search for the keywords "Lear Capital" or "Lear Capital Gold" or "gold ira").

10      25.    Lear also relies on word-of-mouth, including reviews and

11  recommendations on the internet, to generate business.  Indeed, Lear encourages

12  satisfied customers to spread the word via online reviews.  Accordingly, online

13  reviews and recommendations are extremely valuable to Lear, and crucial to the

14  continued vitality and growth of Lear's business.

15              **Defendants' Unfair and Unlawful Conduct**

16      **A.    Defendants' Affiliate Program**

17      26.    Affiliate marketing is a type of performance-based marketing in

18  which a business pays compensation to affiliates (whether individuals or

19  companies) for referred business.  In short, the affiliates promote the business,

20  including through separate websites, and are compensated for each visitor or

21  customer brought to the business by the affiliate's marketing efforts.  Marketing

22  efforts vary from placing banners and ads for the business on the affiliated website

23  to the affiliate recommending or positively reviewing the business.

24      27.    Lear is informed and believes, and on that basis avers, that Regal is

25  also in the business of selling precious metals for placement in customer

26  investment accounts or for collecting purposes.

27

28

28.     Like Lear, Regal promotes itself online and generates business through results yielded by online search engines in response to queries from potential clients looking for precious metal services.

29.     Unlike Lear, however, upon information and belief, Defendants have created and are operating a false and misleading affiliate program for the purpose of falsely promoting Regal and disparaging Lear (among other competitors).

30.     Lear is informed and believes, and on that basis avers that the Regal Sites are infringing, false and deceptive in the following respects:

**1.     The Regal Sites are not in any sense independent.**

31.     The Regal Sites portray themselves as neutral, independent websites operated by qualified professionals in the relevant fields of precious metals, investing, and retirement planning, before proceeding to "independently review" Regal and Lear (among others).  But, upon information and belief, the reality is far, far different.  The sites are not independent, but run by Regal or by its sales agents with Regal's assistance, under its direction and with its knowledge and explicit or implicit consent and encouragement.  And the "reviews" are biased; Lear and Regal's other competitors are denigrated, while Regal is lauded and recommended.

32.     Upon information and belief, in certain instances, the Regal Sites are created and published by defendant Felix, who has publicly stated that he is (alternately) a part owner, marketing director and marketing consultant for Regal and admits to running traffic through his own affiliate sites.  One such example is imfsite.org, as seen in **Exhibit 1**, wherein Felix misstates the nature of the website and his purpose in operating the website before lauding and recommending Regal and negatively reviewing Lear.  On his various Regal Sites, the material relationship between Regal and Felix is not adequately disclosed, if it is disclosed at all.

33.     In other instances, upon information and belief, other Regal Sites are owned independently of Defendants but were in fact created by Defendants;

Mitchell
Silberberg &
Knupp LLP

6240397.3

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

provided content by Defendants or directed as to the content to include, including the negative reviews about Lear and positive reviews of Regal.  Moreover, the owners and operators of these Regal Sites are compensated by Regal for directing customers to Regal.  Yet, these material facts and the relationship between Regal and its agents are not adequately disclosed, if they are disclosed at all.  Representative examples are attached as **Exhibits 2-3, 5, 7-9**.

34.    Finally, in other instances, the Regal Sites are owned independently of Defendants and include content created independently of Defendants but the owners and operators of the sites are compensated by Regal for promoting it and directing customers to it.  The material relationship between Regal and these agents is not adequately disclosed, if it is disclosed at all.

35.    In other words, while the Regal Sites represent themselves to the public and potential clients as independent websites, they are in fact direct advertisements being made by the owners and agents of Regal in an effort to drive traffic and clients to Regal, with the knowledge and assistance of all Defendants.

## 2.    The Regal Sites contain false content.

36.    Upon information and belief, the Regal Sites use false content to make the Sites appear sophisticated and trustworthy, thereby fraudulently convincing consumers to use Regal and not Lear.  This includes, but is not limited to, the use of false identities, fake photographs, false credentials and misstating the source of certain statements (which themselves are false).  Representative examples include:

(a)    Felix's website www.imfsite.org.  While it purports to provide information and articles about the IMF (the international monetary fund), it is really designed to promote Regal.  It has a large section dedicated to reviewing precious metal companies, which denigrates Lear, among others, while recommending Regal.  The site does not disclose that it is controlled by Regal's co-owner/marketing director but instead, upon information and belief, falsely states that Felix is the site's "top editor and contributor," a

Mitchell
Silberberg &
Knupp LLP

6240397.3

8

1   Forbes "featured" financial commentator, and a consultant to Warren Buffett

2   (the Billionaire Sage of Omaha).  *See* **Exhibit 1**.

3       (b)    As another example, another Regal Site is "Reeves Jameson's

4   The Gold IRA Reviewer," in which a distinguished looking gentlemen states

5   that he is "Reeves Jameson, owner and creator of this website."  "Jameson"

6   goes on to explain that "Whilst working on my own successful consultancy

7   business over the years … I started getting queries from my colleagues

8   asking how I managed to maintain the value of my retirement portfolio."

9   His response was to explain how he invested with Regal and that he had

10  "done a lot of the hard work for you in the form of detailed reviews of all the

11  best companies…"  *See* **Exhibits 2 and 3**.  But upon information and belief,

12  "Reeves Jameson" is actually an affiliate named Andrew Egoroff and the

13  photograph is a stock photo "Mature Businessman Wearing Striped Blue

14  Shirt With His Arms Folded" available on 123rf.com.  *See* **Exhibit 4**.  Thus,

15  upon information and belief, there simply is no Reeves Jameson; *a fortiori*,

16  the preceding narrative is false.

17      (c)    Examples of other former and current Regal Sites that, upon

18  information and belief, include fake content are attached as **Exhibits 5-9**.

19      **3.**    **The Regal Sites use Lear's trademark and trade name to**

20      **divert consumers to Regal's website.**

21      37.    Upon information and belief, certain Regal Sites also misleadingly

22  divert web traffic intended for Lear directly to Regal by using mislabeled

23  hyperlinks.  For example, http://silveriracustodian.com/lear-capital-review sets

24  forth Lear's trademark and logo "LEAR CAPITAL®" but when a user clicks on

25  the logo, he or she is instead directed to Regal's website.  *See* **Exhibit 10.**  *See also*

26  **Exhibits 11 & 12** for additional examples.

27

28

Mitchell
Silberberg &
Knupp LLP

6240397.3

9

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

38.     As discussed above, as part of its online promotional efforts, Lear also promotes itself through the use of paid advertisements and the posting of online advertisements, such as video advertisements for its services on YouTube.com.

39.     Upon information and belief, Defendants are using – or causing the owners and operators of certain Regal Sites to use – the same false and deceptive practices discussed above in posting competing videos that negatively review Lear and positively review and recommend Regal.

40.     In addition, upon information and belief, certain of the video reviews also impermissibly use Lear's LEAR CAPITAL® mark to confuse users into believing that the video was actually posted by Lear.  For example, a video review that negatively reviews Lear and then positively reviews and recommends Regal will state that it has been posted by "Lear Capital."  *See* **Exhibits 13-14**.

<u>**Lear Has Been Harmed And Continues To Be Harmed**</u>

<u>**By Defendants' And Their Agents' Wrongdoing**</u>.

41.     Upon information and belief, Defendants involvement is clear. Gallagher is the owner/CEO of Regal and helped design Regal's affiliate moneymaking scheme.  Regal makes it easy to become an affiliate and, along with co-defendant Felix, control the Regal Sites and provide much of the "independent" content that is posted.

42.     Upon information and belief, the affiliates (owners and operators of Regal Sites) are Defendants' agents.  Defendants control the affiliates, including, upon information and belief, through the exclusive nature of their relationship; the terms of Regal's affiliate agreement (which Regal states it requires each affiliate to sign); Regal's payment of commissions; Regal's control and provision of content; Regal's right to retain or recoup commissions for violations of the affiliate agreement; the transfer of IP to Regal; the right to terminate affiliates' participation in the program at will; and the right to alter the terms of the parties' affiliate agreement at will.  Upon information and belief, Defendants also monitor their

Mitchell
Silberberg &
Knupp LLP

6240397.3

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  affiliates' conduct, purportedly to enforce compliance with Regal's affiliate

2  agreement and prevent deceptive advertising.

3      43.    In addition, upon information and belief, to the extent that Defendants

4  contend they are not knowledgeable of their agents' wrongful conduct, it is only

5  because of willful blindness.

6      44.    Finally, upon information and belief, Defendants have also ratified the

7  misconduct of their agents, including but not limited to by accepting the benefits of

8  their agents' misconduct.

9      45.    Regardless, Lear is informed and believes, and on that basis alleges,

10  that Defendants' and their agents' wrongful conduct as described herein have

11  generated multiple millions of dollars of sales for Regal (and in turn, millions of

12  dollars of commissions for Defendants and their affiliates).

13     46.    Upon information and belief, the Regal Sites and Defendants' and

14  their agents' other wrongful conduct have caused and are continuing to cause Lear

15  to lose market share and significant business revenue and profits, and have caused

16  and are continuing to cause irreparable harm to Lear's reputation and goodwill.

17              **FIRST CLAIM FOR RELIEF**

18         [Federal Trademark Infringement – 15 U.S.C. § 1114]

19                   [Against All Defendants]

20     47.    Lear realleges each and every allegation set forth in Paragraphs 1

21  through 46, inclusive, and incorporates them by reference herein.

22     48.    Lear is the owner of all rights, title and interest in the federally

23  registered LEAR CAPITAL® mark and has standing to maintain an action for

24  trademark infringement under 15 U.S.C. § 1114.  The registration is incontestable

25  under the provisions of 15 U.S.C. § 1065, is valid and subsisting and the

26  registration has never been cancelled.

27     49.    With actual and constructive notice of Lear's federal trademark

28  registration and of Lear's extensive and continuous use of the LEAR CAPITAL®

Mitchell
Silberberg &
Knupp LLP

6240397.3

11

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   mark, Defendants have, without authorization, used Lear's LEAR CAPITAL®
2   mark in commerce as described above in Paragraphs 37-40 or have caused and are
3   continuing to cause others to use Lear's mark in commerce as described above in
4   Paragraphs 37-40; specifically Lear's LEAR CAPITAL® mark has been and is
5   being used improperly in false hyperlinks on the Regal Sites so as to improperly
6   direct users to Regal's website and in connection with false, misleading and
7   disparaging video reviews.

8        50.    In addition, with actual and constructive notice of Lear's federal
9   trademark registration and of Lear's extensive and continuous use of the LEAR
10  CAPITAL® mark, Defendants' agents have, without authorization, used Lear's
11  LEAR CAPITAL® mark in commerce as described above in Paragraphs 37-40 or
12  have caused and are continuing to cause others to use Lear's mark in commerce as
13  described above in Paragraphs 37-40; specifically Lear's LEAR CAPITAL® mark
14  has been and is being used improperly in false hyperlinks on the Regal Sites so as
15  to improperly direct users to Regal's website and in connection with false,
16  misleading and disparaging video reviews.  Defendants are directly and vicariously
17  liable for such infringement.

18       51.    Defendants' and their agents' unauthorized use of the LEAR
19  CAPITAL® mark in commerce as described herein has caused or is likely to cause
20  consumer confusion, mistake, or deception in two ways.

21       52.    First, it is actually causing or likely to cause initial interest confusion
22  in that users who are on an infringing Regal Site and seek to go to Lear's website
23  from that site are instead being directed to Regal's website by clicking on Lear's
24  LEAR CAPITAL® mark.  Once there, the user will find a competing product to
25  Lear's product such that a sizeable number of users who were looking to buy
26  precious metals from Lear will instead buy them from Regal.

27       53.    Second, as it relates to the video reviews, by using Lear's LEAR
28  CAPITAL® mark to make it appear that Lear posted the video at issue, Defendants

1    and their agents are confusing the public into believing that Lear is the source of or

2    otherwise affiliated with the review, which then negatively reviews Lear and

3    positively reviews and recommends Regal and thereby deceives the consumer into

4    buying precious metals from Regal instead of Lear.

5         54.    Lear has already been, and is likely to be injured as a result of the

6    foregoing false statements, by a direct diversion of market share and sales to Regal,

7    in an amount to be determined at trial, and by a lessening of Lear's good will and

8    reputation, in an amount to be determined at trial.

9         55.    Unless enjoined by this Court, Defendants and their agents will

10   continue to perform the acts complained of herein and will cause said damages and

11   injury, all to the immediate and irreparable harm of Lear, for which it has no

12   adequate remedy at law.

13        56.    Upon information and belief, Defendants' and their agents' acts as set

14   forth herein were willful and undertaken in bad faith and in a deliberate attempt to

15   capitalize on Lear's goodwill and reputation, and the LEAR CAPITAL® mark,

16   and to mislead the public.  Thus, Lear seeks an accounting of Defendants' profits,

17   and requests that the Court grant Lear, in addition to other damages, three times

18   that amount in the Court's discretion.

19        57.    Because this is an exceptional case involving calculated and willful

20   misconduct by Defendants, Lear is entitled to recover treble damages, treble

21   profits, and attorneys' fees under 15 U.S.C. § 1117(a).

**SECOND CLAIM FOR RELIEF**

[False Designation of Origin – 15 U.S.C. § 1125(a)]

[Against All Defendants]

25        58.    Lear realleges each and every allegation set forth in Paragraphs 1

26   through 57, inclusive, and incorporates them by reference herein.

27        59.    Lear, as the owner of all common law right, title and interest in and to

28   the LEAR CAPITAL® name and mark has standing to maintain an action for false

Mitchell
Silberberg &
Knupp LLP

6240397.3

13

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  designation of origin and unfair competition under Section 43(a) of the Lanham

2  Act, 15 U.S.C. § 1125(a).

3       60.    Defendants have, without authorization, used Lear's LEAR

4  CAPITAL® mark in commerce as described above in Paragraphs 37-40 or have

5  caused and are continuing to cause others to use Lear's mark in commerce as

6  described above in Paragraphs 37-40; specifically Lear's LEAR CAPITAL® mark

7  has been and is being used improperly in false hyperlinks on the Regal Sites so as

8  to improperly direct users to Regal's website and in connection with false,

9  misleading and disparaging video reviews.

10       61.    In addition, Defendants' agents have, without authorization, used

11  Lear's LEAR CAPITAL® mark in commerce as described above in Paragraphs

12  37-40 or have caused and are continuing to cause others to use Lear's mark in

13  commerce as described above in Paragraphs 37-40; specifically Lear's LEAR

14  CAPITAL® mark has been and is being used improperly in false hyperlinks on the

15  Regal Sites so as to improperly direct users to Regal's website and in connection

16  with false, misleading and disparaging video reviews.  Defendants are directly and

17  vicariously liable for such false advertising.

18       62.    Defendants' and their agents' unauthorized use of the LEAR

19  CAPITAL® mark in commerce as described herein has caused or is likely to cause

20  consumer confusion, mistake, or deception in two ways.

21       63.    First, it is actually causing or likely to cause initial interest confusion

22  in that users who are on an infringing Regal Site and seek to go to Lear's website

23  from that site are instead being directed to Regal's website by clicking on Lear's

24  LEAR CAPITAL® mark.  Once there, the user will find a competing product to

25  Lear's product such that a sizeable number of users who were looking to buy

26  precious metals from Lear will instead buy them from Regal.

27       64.    Second, as it relates to the video reviews, by using Lear's LEAR

28  CAPITAL® mark to make it appear that Lear posted the video at issue, Defendants

and their agents are confusing the public into believing that Lear is the source of or otherwise affiliated with the review, which then negatively reviews Lear and positively reviews and recommends Regal and thereby deceives the consumer into buying precious metals from Regal instead of Lear.

65.    Lear has already been, and is likely to be injured as a result of the foregoing false statements, by a direct diversion of market share and sales to Regal, in an amount to be determined at trial, and by a lessening of Lear's good will and reputation, in an amount to be determined at trial.

66.    Unless enjoined by this Court, Defendants and their agents will continue to perform the acts complained of herein and will cause said damages and injury, all to the immediate and irreparable harm of Lear, for which it has no adequate remedy at law.

67.    Upon information and belief, Defendants' and their agents' acts as set forth herein were willful and undertaken in bad faith and in a deliberate attempt to capitalize on Lear's goodwill and reputation, and the LEAR CAPITAL® mark, and to mislead the public.  Thus, Lear seeks an accounting of Defendants' profits, and requests that the Court grant Lear, in addition to other damages, three times that amount in the Court's discretion.

68.    Because this is an exceptional case involving calculated and willful misconduct by Defendants, Lear is entitled to recover treble damages, treble profits, and attorneys' fees under 15 U.S.C. § 1117(a).

## THIRD CLAIM FOR RELIEF

[False or Misleading Advertising – 15 U.S.C. § 1125(a)]

[Against All Defendants]

69.    Lear realleges each and every allegation set forth in Paragraphs 1 through 68, inclusive, and incorporates them by reference herein.

70.    Defendants have created and are operating an affiliate website program that is designed to mislead the public and divert potential clients from

Lear to Regal through the use of websites and other online content that purport to present independent consumer reviews but, in reality, are transparently designed to promote Regal and disparage Lear (among other competitors).

71.     In furtherance of this goal, the Regal Sites are rife with false content, including content that is literally false, or if not literally false then misleading, and fail to disclose their connection to Regal, all in a manner that is likely to deceive or confuse customers or prospective customers regarding the nature, characteristics, or quality of the services offered by Lear and Regal.

72.     Defendants have made these false and misleading statements in the course of advertising their own services and denigrating Lear's services.

73.     In addition, Defendants' agents have made these false and misleading statements in the course of advertising Regal's services and denigrating Lear's services for which Defendants are directly and vicariously liable.

74.     These statements have or are likely to mislead or confuse consumers as to the quality of Lear's services and goods and Defendants' services and goods and otherwise mislead the public and divert business from Lear to Regal.

75.     Lear has already been, and is likely to be further injured as a result of the foregoing false statements, by a direct diversion of market share and sales to Regal, in an amount to be determined at trial, and by a lessening of Lear's good will and reputation, in an amount to be determined at trial.

76.     Unless enjoined, Defendants' and their agents' actions will continue to cause irreparable injury to Lear.  Accordingly, Lear is entitled to monetary and equitable relief.

77.     Because this is an exceptional case involving calculated and willful misconduct by Defendants, Lear is entitled to recover treble damages, treble profits, and attorneys' fees under 15 U.S.C. § 1117(a).

**FOURTH CLAIM FOR RELIEF**

[False or Misleading Advertising –Cal. Bus. & Prof. Code § 17500 *et seq.*]

[Against All Defendants]

78.    Lear realleges each and every allegation set forth in Paragraphs 1 through 77, inclusive, and incorporates them by reference herein.

79.    Defendants have created and are operating an affiliate website program that is designed to mislead the public and divert potential clients from Lear to Regal through the use of websites and other online content that purport to present independent consumer reviews but, in reality, are transparently designed to promote Regal and disparage Lear (among other competitors).

80.    In furtherance of this goal, the Regal Sites are rife with false content, including content that is literally false, or if not literally false then misleading, and fail to disclose their connection to Regal, all in a manner that is likely to deceive or confuse customers or prospective customers regarding the nature, characteristics, or quality of the services offered by Lear and Regal.

81.    Defendants made these false and deceptive statements in the course of advertising their own services and denigrating Lear's services.

82.    In addition, Defendants' agents made these false and deceptive statements in the course of advertising Regal's services and denigrating Lear's services.

83.    Past and prospective customers were or are likely to be deceived by these statements, as they will likely consider the statements made about Lear to be negative and the statements about Regal to be positive, and the statements made are likely to influence the consumer's decision as to whether to use Lear's services or Regal's services.

84.    Lear has already been, and is likely to be further injured as a result of the foregoing false statements, by a direct diversion of market share and sales to

Mitchell
Silberberg &
Knupp LLP

6240397.3

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Regal, in an amount to be determined at trial, and by a lessening of Lear's good will and reputation, in an amount to be determined at trial.

85.    Unless enjoined, Defendants' and their agents' actions will continue to cause irreparable injury to Lear.  Accordingly, Lear is entitled to equitable relief.

## FIFTH CLAIM FOR RELIEF

[Unfair, Unlawful, or Fraudulent Business Acts –

Cal. Bus. & Prof. Code § 17200 et seq. and Common Law]

[Against All Defendants]

86.    Lear realleges each and every allegation set forth in Paragraphs 1 through 85, inclusive, and incorporates them by reference herein.

87.    Based on the acts described herein, including but not limited to Defendants' and their agents' (a) creation and operation of an affiliate program that is designed to mislead the public and divert potential clients from Lear to Regal through the use of websites and other online content that purport to present independent consumer reviews but, in reality, are transparently designed to promote Regal and disparage Lear (among other competitors) and (b) improper use of Lear's LEAR CAPITAL® mark as described herein, Defendants have committed unfair, unlawful, and/or fraudulent business acts and practices in violation of California Business and Professions Code § 17200 *et seq* and California common law.

88.    As a result of Defendants' and their agents' aforesaid conduct, Lear has suffered substantial damage and irreparable harm constituting an injury for which Lear has no adequate remedy at law.  Unless this Court enjoins Defendants' conduct, Lear will continue to suffer irreparable harm.  Lear also has suffered loss of profits and other damages as a result of Defendant's aforesaid conduct.

89.    Lear is entitled to preliminary and permanent injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

90.    Lear is entitled to damages pursuant to California common law.

91.     Lear is entitled to restitution pursuant to California's unfair competition statute, Cal. Bus. & Prof. Code Code § 17200 *et seq*.  Lear is not seeking damages at law pursuant to this statutory claim.

## PRAYER FOR RELIEF

WHEREFORE, Lear respectfully requests judgment against Defendants as follows:

1.     Permanent mandatory and prohibitory injunctive relief designed to stop the foregoing wrongful conduct;

2.     Awarding Lear its actual damages in an amount to be proven at trial;

3.     Awarding Lear any and all profits earned by Defendants or their agents by reason of the unlawful acts complained of herein as provided by law;

4.     Awarding Lear exemplary damages, including punitive and treble damages and treble profits for Defendants' willful and malicious behavior and as provided by law;

5.     Awarding Lear its reasonable attorneys' fees, prejudgment and postjudgment interest, and costs of suit as provided by law; and

6.     Granting other relief as may be properly sought or the Court may deem just and proper.

DATED: February 6, 2015          MITCHELL SILBERBERG & KNUPP LLP


                                 By:  /s/Aaron M. Wais
                                      Aaron M. Wais (SBN 250671)
                                      Attorneys for Plaintiff
                                      Lear Capital, Inc.

Mitchell
Silberberg &
Knupp LLP

6240397.3

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

## **DEMAND FOR JURY TRIAL**

2
Lear demands a trial by jury of all issues triable of right by jury.

3
DATED: February 6, 2015          MITCHELL SILBERBERG & KNUPP LLP

4

5
By:   /s/Aaron M. Wais

6
Aaron M. Wais (SBN 250671)
Attorneys for Plaintiff

7
Lear Capital, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

6240397.3

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**