1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                 WESTERN DIVISION

4                    - - -

5     HONORABLE DEAN D. PREGERSON, DISTRICT JUDGE PRESIDING

6

7   LEAR CAPITAL, INC.,              )
                                     )
8          Plaintiffs,               )
                                     )
9                                    )
                                     )
10         vs.                       ) No. CV 15-00869-DDP
                                     )
11                                   )
                                     )
12  REGAL ASSETS, LLC,               )
                                     )
13         Defendants.               )
    ─────────────────────────────    )

14

15

16              REPORTER'S TRANSCRIPT OF PROCEEDINGS

     *MOTION TO DISMISS CASE FILED BY DEFENDANTS KELLY*
17      *FELIX, TYLER GALLAGHER, REGAL ASSETS LLC*
     *MOTION TO STRIKE PLAINTIFF'S STATE LAW CLAIMS*
18      *COMPLAINT FILED BY DEFENDANT KELLY FELIX*

19              LOS ANGELES, CALIFORNIA

20               MONDAY, JUNE 8, 2015

21  ─────────────────────────────────────────────────────

22              MARIA R. BUSTILLOS
             OFFICIAL COURT REPORTER
23               C.S.R. 12254
             UNITED STATES COURTHOUSE
24            312 NORTH SPRING STREET
                   ROOM 404
25         LOS ANGELES, CALIFORNIA 90012
                 (213) 894-2739

```
 1                     A P P E A R A N C E S

 2

 3

 4      ON BEHALF OF THE PLAINTIFFS,
        LEAR CAPITAL, INC.:          MITCHELL, SILBERBERG & KNUPP
 5                                   BY:  SETH E. PIERCE, ESQ.
                                     11377 W. OLYMPIC BOULEVARD
 6                                   LOS ANGELES, CALIFORNIA 90064-168
                                     (310)312-2000
 7

 8                                   MITCHELL, SILBERBERG & KNUPP
                                     BY:  AARON MICHAEL WAIS,
 9                                   ESQ.
                                     11377 W. OLYMPIC BOULEVARD
10                                   LOS ANGELES, CALIFORNIA 90064-168
                                     (310)312-2000
11

12
        ON BEHALF OF THE DEFENDANTS,
13      REGAL ASSETS, LLC:           WINSTON & STRAWN LLP
                                     BY:  ERIN R. RANAHAN
14                                        DIANA HUGHES
                                     333 SOUTH GRAND AVENUE
15                                   38TH FLOOR
                                     LOS ANGELES, CALIFORNIA 90071
16                                   (213)615-1700

17
                                     WINSTON & STRAWN LLP
18                                   BY:  SAUL ROSTAMIAN, ESQ.
                                     333 SOUTH GRAND AVENUE
19                                   38TH FLOOR
                                     LOS ANGELES, CALIFORNIA 90071
20                                   (213)615-1700

21

22

23

24

25
```

1                          <u>**I N D E X**</u>

2

3                                                                    <u>PAGE</u>

4      MOTION TO DISMISS CASE FILED BY DEFENDANTS KELLY

5      FELIX, TYLER GALLAGHER, REGAL ASSETS LLC

6      MOTION TO STRIKE PLAINTIFF'S STATE LAW CLAIMS

7      COMPLAINT FILED BY DEFENDANT KELLY FELIX :                     4

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              LOS ANGELES, CALIFORNIA; MONDAY, JUNE 5, 2015
2                              -o0o-
3                 (COURT IN SESSION AT 10:59 A.M.)
4         THE CLERK:  Calling item five, CV 15-00869-DDP:
5    Lear Capital, Inc. v. Regal Assets, LLC, et al.
6              MR. PIERCE:  Good morning, Your Honor.
7              Seth Pierce and Aaron Wais for the plaintiff.
8              MS. RANAHAN:  Good morning, Your Honor.
9              Erin Ranahan for defendants
10             THE COURT:  Good morning.
11             MR. ROSTAMIAN:  Good morning, Your Honor.
12             Saul Rostamian for the defendants.
13             MS. HUGHES:  And good morning, Your Honor.
14             Diana Hughes for the defendants.
15             THE COURT:  Good morning.
16             THE COURT:  Okay.  I'll hear from defendant --
17   defendants...
18             MS. RANAHAN:  Good morning, Your Honor.
19             So today we have two motions against the -- the
20   plaintiffs here.  And one of them is the anti-SLAPP and one
21   is the motion to dismiss.
22             Now, I know Your Honor has dealt with cases earlier
23   against Regal Assets and its affiliate marketers, but there's
24   a real difference between those prior cases and this case.
25             THE COURT:  Slow down a little bit.
```

UNITED STATES DISTRICT COURT

```
 1              MS. RANAHAN:  Thank you, Your Honor.

 2              One difference in this case is that there's

 3   absolutely no false statement alleged anywhere at issue in

 4   this case.  There's not anything that was said about

 5   Lear Capital on any of the affiliate Web sites -- any of the

 6   affiliate Web sites that are at issue and all of the exhibits

 7   that they've attached to both oppositions.  There are no

 8   statements that are false about Lear or that are misleading.

 9              THE COURT:  It's just too fast.

10              MS. RANAHAN:  I'm sorry, Your Honor.

11              THE COURT:  Okay.  Just, please.

12              MS. RANAHAN:  Okay.

13              THE COURT:  Go ahead.

14              MS. RANAHAN:  So for a false advertising claim,

15   there has to be a false statement about either Lear's

16   products.

17              THE COURT:  Right.  There has to be something

18   false.

19              MS. RANAHAN:  Right.

20              THE COURT:  It's in the title.

21              MS. RANAHAN:  Correct.

22              THE COURT:  Okay.

23              MS. RANAHAN:  And so both the anti-SLAPP lawsuit --

24   and there was an anti-SLAPP motion in the motion to dismiss

25   deal with that point.  There's -- there's just no false
```

```
 1    statement here.  So that distinguishes this from the earlier
 2    American Bullion case.  So as far as the anti-SLAPP goes,
 3    we're only bringing that on behalf of individual defendant,
 4    Mr. Kelly Felix.  It's not on behalf of Regal.  It's on
 5    behalf of one affiliate marketing recruiter.  And what he
 6    does, is he communicates in three ways.  He communicates
 7    about the gold market in general.  He has personal blogs and
 8    Web Sites, including what was Exhibit 1 to Lear's complaint
 9    which is an IMF.org site.  That Web site provides free
10    consumer information about the gold industry.  Then he also
11    recruits affiliates.  And in addition to that, he promotes
12    general affiliate strategies on how to build a Web site and
13    the foundation for his programs is that he wants to promote
14    companies that he believes in; that are selling products that
15    are -- have a great reputations -- companies that have great
16    reputations.  Now, the plaintiffs -- if you've read the
17    factual section of our anti-SLAPP motion, do not have great
18    reputations.  They are selling something called a
19    "collectibles gimmicks gold.
20              THE COURT:  What does that matter?
21              MS. RANAHAN:  Well, because what our affiliates are
22    spreading and communicating is that our Better Business
23    reviews are good and that's why you should buy our client's
24    products.  And the scam that's going on, Your Honor, with all
25    of the plaintiffs that have sued Regal and their affiliates,
```

```
 1    to silence the speech about the scams that have happened,
 2    including -- so let me -- if you would just give me --
 3              THE COURT:  I don't have understand the argument.
 4    So if the argument is they're bad.  They're bad.  That's
 5    what -- they've had all these complaints.  They're bad.
 6              MS. RANAHAN:  Right.
 7              THE COURT:  Okay.
 8              MR. RANAHAN:  So that's why --
 9              THE COURT:  Therefore, we're good.
10              MS. RANAHAN:  No.  That's why this is a public
11    interest issue, because our affiliates are communicating the
12    truth about Better Business Bureau complaints.
13              THE COURT:  Okay.  So let's assume that some of
14    those complaints are true.
15              MS. RANAHAN:  Right.
16              THE COURT:  I don't know what the context was.  I
17    don't know how many customers they have.  If you were to look
18    at some large stock brokerage company, they would have a lot
19    of complaints probably that read like this because they have
20    a lot of clients.
21              MS. RANAHAN:  Right.
22              THE COURT:  And they probably have people that are
23    customer service representatives -- some that may not do a
24    good job.  They may represent things; they may lie.  I don't
25    know.  So you -- you've pointed out that there have been some
```

```
 1    bad things ostensibly.
 2              MS. RANAHAN:  Right.
 3              THE COURT:  So what --
 4              MS. RANAHAN:  Right.  And plaintiffs don't dispute
 5    that.
 6              THE COURT:  Okay.  So what does that mean?
 7              MS. RANAHAN:  So that gets us to the third or first
 8    threshold that this is a public issue.  Then you get to --
 9              THE COURT:  I don't know that they don't dispute
10    it, but you haven't put it into context.  So is it every
11    person that has that type of complaint; one in a million?
12    Where?  What's the number?
13              MS. RANAHAN:  Okay.  Well, I'll just --
14              THE COURT:  Do you know?
15              MS. RANAHAN:  Well, we've submitted evidence --
16              THE COURT:  Do you know?
17              MS. RANAHAN:  About how many complaints there are
18    in relation to how many gold they've sold?
19              THE COURT:  Yes.
20              MS. RANAHAN:  No, but we have put in evidence
21    that it's -- there's been various lawsuits and fines for this
22    type of conduct.  And what it is, is that when someone calls
23    to buy Gold Bullion which is gold that's valuable, the
24    plaintiffs will then direct them to a different type of gold
25    which is this collectibles gold that is not worth its value
```

| | |
|---|---|
| 1 | and its weight.  And they'd sell them on various |
| 2 | different sales market -- |
| 3 | THE COURT:  So their business model is bad? |
| 4 | MS. RANAHAN:  Correct.  And our business model is |
| 5 | not that business model.  And our affiliates, including |
| 6 | Mr. Kelly Felix are communicating and informing the public |
| 7 | and consumers about the difference between the two business |
| 8 | models.  And what this -- isn't the merits of what you have |
| 9 | to decide how bad they are.  It just makes it a public issue, |
| 10 | so that we get past the first step in an anti-SLAPP analysis |
| 11 | which is, is this a public issue and is this something that |
| 12 | our affiliates are free to talk about or should they be |
| 13 | silenced by now nine lawsuits that the plaintiffs have filed |
| 14 | against various individuals.  And these are not employees of |
| 15 | Regal.  Mr. Felix does not -- |
| 16 | THE COURT:  Is there anything that prevents your |
| 17 | clients from talking? |
| 18 | MS. RANAHAN:  Well, just the fact that there's now |
| 19 | nine lawsuits, and they're trying to put a lot of pressure on |
| 20 | them to -- if you look at the exhibits -- and there's a 125 |
| 21 | exhibits that they've attached.  One of them is his -- |
| 22 | Mr. Felix's personal blog.  One of them is just the |
| 23 | IMF Web site that's not selling a thing.  And the point is |
| 24 | that this is getting past the first threshold.  So then you |
| 25 | have to look at the substance of the merits -- of the claims |

```
 1    against the Mr. Felix individually.  And there's no evidence
 2    for that.  They've submitted no evidence of damages which
 3    they're required to do for every one of their claims on an
 4    anti-SLAPP motion.  They've -- they did that in the
 5    American Bullion case, Your Honor, when they had an actual
 6    false statement.  In that case they allege that
 7    American Bullion, there was a -- a statement about an
 8    American Bullion fraud incident.  And there was a specific
 9    material allegation there about that.  And they had
10    declaration after declaration of people that were allegedly
11    misled by that statement, and Your Honor considered that
12    evidence in granting a preliminary injunction.
13             Here, on an anti-SLAPP they're required to come
14    forward with evidence.  There's no evidence that they've been
15    damaged by anything that Mr. Felix.
16             THE COURT:  Well, there is burden-shifting analysis
17    that you go through --
18             MS. RANAHAN:  Right.
19             THE COURT:  -- and what they say is you -- you
20    haven't reached part --
21             MS. RANAHAN:  One.
22             THE COURT:  -- part -- yeah.
23             MS. RANAHAN:  Right.  And so that's -- so part one
24    is that it's a public issue and that we've gotten to that --
25             THE COURT:  And they say, Well, you know -- well,
```

```
 1    I'm not going to phrase their arguments.  You know what they
 2    are.
 3            Go ahead.
 4            MS. RANAHAN:  Right.  Well, if you look at their --
 5    I think it's really critical that while there are
 6    125 exhibits --
 7            THE COURT:  It's just too fast.  The problem is
 8    that a lot of your words become one sentence, and the court
 9    reporter cannot keep up.
10            MS. RANAHAN:  I'm sorry.
11            Thank you sorry.
12            THE COURT:  So just please try to slow down.
13            MS. RANAHAN:  So there are 125 or so exhibits.
14    About 50 of those relate to the so-called "false persona"
15    where they name -- they use a different name or an image than
16    what their actual name is; but there's no allegations that
17    Mr. Felix had anything to do with that; that he himself
18    personally used some other name or used a false credential or
19    anything.  So what I'm talking about is not the whole
20    lawsuit.  We're talking about the state law claims against
21    Mr. Felix and whether there are evidentiary basis to
22    establish any of the claims against him.
23            THE COURT:  Right.  Okay.
24            You want to deal with the SLAPP part first?
25            MR. PIERCE:  Yes, Your Honor, please.
```

1          THE COURT:  Go ahead.

2          MR. PIERCE:  I feel like we've been here before

3    Your Honor.  This is not a free speech case.  Regal and

4    Mr. Felix have asserted that argument repeatedly in the other

5    related proceedings.  And this court specifically has

6    rejected the idea that there is a free speech defense here.

7    False advertising is not protected by the first amendment and

8    that is specifically what we're challenging here.  I'm not

9    challenging Mr. Felix's right to talk about the IMF or to

10   talk about gold or even gold companies.  We're challenging a

11   very specific marketing machine which uses false personas and

12   false credentials and smear reviews without disclosing that

13   they are being paid by Regal to make those statements.  Felix

14   and Regal like to liken themselves to consumer reports or

15   even to *New York Times*, but that is not the situation.

16   Consumer reports performs independent testing.  Consumer

17   reports puts people through their cases.  They earn their

18   ranking.  This is the exact opposite.  This is Regal paying

19   for advocacy by Felix and not disclosing to the consumers who

20   are misled by these advertisements into believing that they

21   are getting a superior product or superior customer service

22   or superior anything and --

23          THE COURT:  Well, how is he connected to false

24   statements that relate to your client?

25          MR. PIERCE:  In multiple respects, Your Honor,

1    first of all, he is not an independent third-party person

2    here.  We have presented evidence as part of the phase II

3    analysis that he has made prior claims to being a part owner;

4    that he has a Regal e-mail address; that he's the affiliate

5    manager of the company.  They have submitted declarations,

6    saying that's not true; but under the analysis under

7    phase II, all we have to do is create a disputed fact.  They

8    have to come forward and disprove our evidence to prevail on

9    anti-SLAPP motion.  It's a very low standard, particularly in

10   federal Court which actually requires usually less than a

11   showing in state court.  So he is part and parcel of this

12   entire false advertising machine that we're talking about,

13   one.  Second, even if you discount that, he specifically is

14   an agent as your prior rulings have determined.  In fact, for

15   a multiple-year period he was, I think in your words, an

16   exclusive shield for the company because he was required not

17   to be able to advertise or market for any one else.  He was

18   an exclusive effective sales agent for Regal and while they

19   talk about in their briefing that -- you know, I think he

20   uses the word in his declaration that his Web site is

21   primarily engaged in discussing the IMF.  As we showed in our

22   brief from materials that he himself has post on the

23   Internet, his primary purpose is getting people to click

24   through and make a transaction.  And the pages about the IMF

25   are -- in his words -- for search engines to fall in love

1  with and promote his Web site.  The idea that he is somehow

2  an independent actor and all of this is not apparent on the

3  record at all.  Quite the opposite, he is a sales agent of

4  Regal who earns a commission based on each person he forwards

5  and that commission is based on the value of the gold or

6  other metals that they purchase from the company.  I can't

7  think of a more direct sales experience than that or someone

8  directly engaged in the sale of precious metals.

9           And then third, he has created these recruitment

10  sites that Ms. Ranahan mentioned in her argument where he

11  creates Web sites for other affiliates to use.  You know,

12  "done for you" Web sites is the language that he uses,

13  including the smear campaigns and including these inadequate

14  disclosures, including Lear's embedded logo with a

15  misdirected hyperlink that brings him back to Regal.  He's

16  done all of these things.  He produced a mass amount of

17  evidence.  They talk about 125 exhibits as if it's -- if

18  there's something wrong with that.  It just shows that that's

19  the situation that we're confronting here.

20           THE COURT:  Okay.  Thank you.

21           Anything further on the anti-SLAPP?

22           MS. RANAHAN:  Yes, Your Honor.

23           THE COURT:  Go ahead.

24           MS. RANAHAN:  Your Honor, you asked Mr. Pierce one

25  question about where's the false statement that's at issue

```
1    here?  And I would just like to point out that in their

2    opposition, they actually state that -- they admit this:

3    Defendants are correct that this case is not a case in which

4    a company is alleged to have made a specific false statement

5    about its or its competitors' products.  So in this entire

6    Lear case for false advertising, there's no false statement

7    about Lear anywhere.

8              And just -- the -- the implication is that

9    Mr. Felix is just doing whatever he does to make money; but

10   American Bullion tried to recruit him to come over and do

11   affiliate marketing for them, and he refused because he

12   wanted to do this with this integrity.  And he is an

13   affiliate marketer for several other companies.  It's not

14   just Regal.  He does amazon.com.  There's 20 other companies.

15   So he's not a captive shrill.  I understand the --

16             THE COURT:  What does that mean, "amazon.com," that

17   Amazon hired him?

18             MS. RANAHAN:  He's an affiliate -- he's not an

19   employee of any of these companies.  It's an affiliate

20   marketing where you are paid -- you're paid commissions when

21   sales go through.

22             THE COURT:  Right.  I know -- I know what it is.

23             MS. RANAHAN:  Right.

24             THE COURT:  Okay.

25             MS. RANAHAN:  And then just as far -- I believe the
```

```
 1    implication was that the commercial exception of why it's

 2    somehow -- -- but that -- that exception is very narrow and

 3    the courts have held it to be very narrow.  And it requires

 4    that he -- that Mr. Felix primarily be engaged in the selling

 5    of goods.  And there's nowhere where you can buy gold from

 6    Mr. Felix.  He doesn't sell on his Web site.  You can't call

 7    him up.  He is providing free consumer information that could

 8    lead to leads; that could recruit more affiliates, but it's

 9    not primarily engaged in sales.  He doesn't sell anything.

10             THE COURT:  Okay.  Thank you.

11             Go ahead.

12             MR. PIERCE:  Thank you, Your Honor.  Just on the

13    "no false" statement point...

14             We are not alleging that there is an

15    American Bullion exchange Ponzi scheme type statement that's

16    being put on Mr. Felix's Web site, but that does not mean

17    that there are not false statements being made.  The false

18    statements even on the IMF site .org go to his

19    representations regarding his independence; his neutrality,

20    his lack of compensation when he's being compensated by all

21    the companies that he's reviewing; comments that suggest that

22    his reviews are independent and neutral and therefore should

23    be relied upon.  There's no requirement that a specific false

24    statement be made about *Lear* itself.  There's a requirement

25    that false statements be made that could induce a purchase or
```

```
 1   disparage a company.  And what he is doing with these top ten
 2   review sites, he's creating the appearance of neutrality and
 3   the appearance that he has conducted this extensive
 4   investigation and determined that Regal is a superior service
 5   provider, a superior provider of these services to its
 6   customers.
 7            THE COURT:  But how do you -- isn't that a slippery
 8   slope where you can question anybody's independence that has
 9   a review site because they might have some -- some
10   relationship on some level with some company and pretty soon
11   they're not allowed to have any relationship and you're in
12   this sort of slippery slope of everything is actionable
13   because you didn't disclose that you made 20 bucks on some
14   program that you got paid for?
15            MR. PIERCE:  I don't believe so, Your Honor.
16            Could there be arguments made at some gray line
17   point in the continuum?  Perhaps.
18            THE COURT:  There's --
19            MR. PIERCE:  -- but we're not in the continuum
20   here.  We're all the way over on one side where he's making a
21   percentage -- a specific percentage of each sale that he
22   generates.  This is not a situation of somebody getting
23   five bucks or ten bucks.  He's purporting to earn 30 to
24   50,000, as much as $100,000 a month for these Web sites.
25            THE COURT:  Right.  I'm just questioning whether,
```

```
1    you know, you -- you get in a situation where people that --
2    I mean, the web is just full of people purporting to offer
3    independent advice on everything and then direct you to
4    various products or services.  You know, everything --
5    whatever it is, if someone is evaluated and told you to buy
6    that or a different one.  So I guess the concern I would have
7    would be to, you know -- to get into a legal arena where, you
8    know, those kinds of Web sites all of a sudden become fair
9    game.
10             MR. PIERCE:  I understand, Your Honor; but I think
11   in this particular case, you have someone who purports to be
12   an owner or co-owner or the marketing director or some other
13   affiliate position with the company, going out and pretending
14   to be independent and neutral, while promoting his own
15   company.  That takes this case out of whatever concern you
16   might have in a broader sense about review sites, in general.
17   This is not consumer reports.  This is not Yelp or even some
18   case where there could be -- you know, just general reviews
19   or my opinion as to where someone should go.  You have a very
20   specific situation where somebody is being compensated
21   directly by the company based on the reviews he's making,
22   without in our view, adequately disclosing them.  And also --
23             THE COURT:  Okay.  So what if he gets compensation
24   from all of the sites where there's a click-through.
25             MR. PIERCE:  He needs to disclose it.  The FTC
```

```
 1    rules on that are perfectly clear and just commonsense

 2    indicates that if someone is going to make a recommendation

 3    and be paid for that recommendation, they need to disclose

 4    that to a consumer, who is relying upon their Web site.  The

 5    other big picture point I would make is this is an anti-SLAPP

 6    motion.  They're trying to shut this case down and say, You

 7    don't even get to prove your case.

 8               THE COURT:  Yeah, I know.  I know that.

 9          Thank you.

10               MR. PIERCE:  Thank you, Your Honor.

11               THE COURT:  Yes?

12               MS. RANAHAN:  Your Honor, I would also just like to

13    point out that Mr. Felix has always had a disclosure on his

14    Web site and after Your Honor put in the specific language in

15    the preliminary injunction in American Bullion, he has had

16    that court sanction language, and he has had that language

17    since before this lawsuit was filed.  So there is no --

18               THE COURT:  Well, there was some disclosure.  The

19    adequacy of that disclosure was -- was in dispute before.

20               MS. RANAHAN:  Right.

21               THE COURT:  And the --

22               MS. RANAHAN:  But -- but between the time that

23    Your Honor granted the injunction and this lawsuit was filed,

24    he has put up the one that Your Honor has -- has -- has --

25               THE COURT:  Right.  And so the plaintiffs say
```

 1   that's fine, but we still have damages.

 2          MS. RANAHAN:  Right.  But they haven't -- once

 3   again, they haven't produced a shred of evidence of damages

 4   and they were required to do that.  We've cited the *Church of*

 5   *Scientology* case and several other cases where courts say if

 6   you were damaged, you're right that you don't need to weigh

 7   the evidence.  If they put in evidence of damages and we say

 8   you are damaged, you know, you don't have to decide it; but

 9   they did not put in any damage --

10          THE COURT:  Right.

11          MS. RANAHAN:  -- because how could they be damaged

12   by the truth that's out there?  There's nothing that's false.

13   There's no damage.  The fact that someone -- and not to

14   mention, Your Honor, they've made the statement

15   that Mr. Felix, even though he has never been an owner or

16   employee, there was a statement where he claimed to be an

17   owner at one point because they were in tox and that has no

18   longer -- that never came to fruition.  And he's explained

19   that; but if he had said he was the owner, where is the

20   confusion there?  How are people confused into his

21   affiliation, if he's going around claiming to be affiliated

22   with Regal.  It's contradictory.

23          THE COURT:  Well, I don't know that that disclosure

24   was on the same -- in the location as these --

25          MS. RANAHAN:  It was on one of his --

```
 1          THE COURT:  His reported reviews.
 2          MS. RANAHAN:  All of his blogs and all of his pages
 3   are at issue in these exhibits.  And so everything from his
 4   personal blog to his IMF page, to every Web site he has ever
 5   run are now being brought into issue, even though there's
 6   nothing untrue about Lear anywhere.
 7          And just one more point is that there was a case,
 8   j2 Communications that Judge Otero decided.  And he found
 9   that in a situation where affiliate marketers were being
10   compensated based on sales that ultimately happened, the fact
11   that those Web sites weren't proposing the transaction and
12   were not proposing a sale, meant that the commercial
13   exception didn't apply, regardless of the fact that that they
14   were making commissions off of that.
15          And plaintiffs have dismissed that as an outlier,
16   but it's really the only case that's dealt with a head-on in
17   this district.
18          THE COURT:  Okay.  Thank you.
19          Mr. Pierce:  Your Honor --
20          Go ahead.
21          MR. PIERCE:  Just on the j2 decision, j2 denied the
22   anti-SLAPP motion.  It did find that the commercial exception
23   didn't apply which I don't agree with its analysis of, but
24   ultimately on the facts presented, which are far less
25   compelling facts than the ones presented here, the Court
```

1    denied the anti-SLAPP.

2              As to the damages point that Ms. Ranahan made...

3              We presented evidence of hundreds and thousands, if

4    not millions of dollars, in commissions being paid to these

5    affiliates, including Mr. Felix directly, including snapshots

6    that he's put on the Web of the commission he's made based on

7    these Web sites.

8              We have presented evidence of customers, thanking

9    nonexistence reviewers, people who don't exist who are

10   completely made up and fictionalized.  We also have the *j2*

11   decision which they cite which makes their point that

12   customer reliance is not required at this stage of the

13   proceedings which is at page ten of the LEXIS cite.  We also

14   have our injunctive relief claim.  And I think there's also

15   just commonsense, which is if Pepsi started a rumor that Coke

16   had carcinogens, I think you could draw from that conclusion,

17   particularly an anti-SLAPP point of the process, that that is

18   damaging to someone's reputation.  If you're saying that Lear

19   is number five and Regal is number one --

20             THE COURT:  I understand.  That's fine.  I'm going

21   to move on to the next issue.  Let's move on to the 12(b)(6).

22             MR. PIERCE:  Thank you, Your Honor.

23             THE COURT:  Thank you.

24             MS. RANAHAN:  So on the 12(b)(6), Your Honor, some

25   of the same overlap in that first -- there's no false

```
 1    advertising or there's no false statement about their

 2    product -- or Regal's products.

 3              THE COURT:  Right.  You made all those arguments.

 4              MS. RANAHAN:  Right.  So we make that point in the

 5    12(b)(6).

 6              Also, as far as the connection between the

 7    defendants and a fake persona that was put up or, you know,

 8    an alleged -- the things that they allege were misleading

 9    about Lear since there are no false statements about Lear,

10    including the picture or the false persona, there's just no

11    connection or link between the defendants and who --

12    whichever affiliate decided to use a certain picture or use a

13    certain name.  And I mean, I know that omissions alone in the

14    American Bullion case there was that affirmative false

15    statement that was combined and you looked at the omissions

16    and the Reeves Jameson picture in sort of conjunction; but

17    here, we are only left with only omissions which are not

18    enough as a matter of law and we've cited a lot of cases that

19    support that, and then you're left with just this -- these

20    allegations that people decided to use a picture that might

21    not have been them or a name that might not have been them.

22    And there's no -- whether that alone is false advertising

23    which we would dispute that that alone is not, because it's

24    not a false statement about the product or, you know, the

25    Lear product or the Regal product.  It's what picture or name
```

```
 1    someone decides to use to communicate something.

 2              And in any event, the defendants here,

 3    Mr. Gallagher, Mr. Felix, or Regal have not encouraged

 4    anybody to use fake photos, and there's no evidence -- and

 5    we're not -- there's no allegations that they have.

 6              THE COURT:  You know what?  Really honestly, if you

 7    keep speaking that quickly, I'm not going to get anything,

 8    and the court reporter is not going to take it down.  So just

 9    really --

10              MS. RANAHAN:  I'm sorry.  I'm sorry.

11              THE COURT:  Okay.  Really.

12              MS. RANAHAN:  Okay.  So the point is that these

13    false pictures and these false names, have no connection to

14    the actual defendants in this case.  There's no allegation --

15    as far as alter ego allegations, they have to be specific and

16    you have to go through factual allegations for each element.

17    You can't just in a conclusory manner say, alter ego --

18    there's no alter ego.  There has to be some reason why the

19    defendants had something to do with the fact that people

20    selected a certain photo to communicate something or chose to

21    select certain identifying information, and there's just not

22    that here in this complaint.

23              THE COURT:  Right.  Well, they say that there is

24    that nexus.  And we've already talked about that issue.

25    You've said there isn't.
```

1           MS. RANAHAN:  Right.

2           THE COURT:  Right.

3           THE COURT:  Right.  Okay.  Thank you.

4           MS. RANAHAN:  Okay.

5           MR. WAIS:  I'm going to try not to repeat the

6    argument that my colleague here already made.  I think as

7    Mr. Pierce already said, it's very clear if you go through

8    our complaints -- you have to keep in mind that we're at the

9    Rule 12(b)(6) stage.  We're talking about allegations; not

10   evidence; not what the compacts that were borne out will be.

11   The allegations are clear that Regal, Gallagher, and Felix --

12   and it alleges that they directly participated in the false

13   advertising; they provide content for the false advertising;

14   and that they also -- that these affiliates are agents of

15   theirs.  That is all set forth.

16           In terms of the law concerning omissions and

17   failures to disclose, the case law is clear that those can be

18   actionable by themselves where we think there are false

19   statements in the false personas and the false

20   representations and neutrality when they're actually biased

21   and just the overall smearing of Lear and positively

22   recommending Regal.  Cases that we've cited, for example,

23   *U.S. Healthcare* state that an omission or failure to disclose

24   is actionable if the statement is affirmatively misleading,

25   partially incorrect, or untrue because this failure to

```
 1    disclose makes another material statement or material fact
 2    false.  And here, that's exactly what we have going on.  We
 3    have affiliates who are purporting to claim that Regal is
 4    better than Lear and that they've done their independent
 5    research and that they've done their -- their -- you know,
 6    for lack of a better word, experts in the field and have no
 7    affiliation.  And that's just not true.  So fact that --
 8             THE COURT:  Do the statements say that Regal is
 9    better than Lear
10             MR. WAIS:  They all either rank -- do a ranking.
11    So they have Regal number one and Lear at some point down
12    below or they have statements so as to point out only the
13    negative reviews of Lear and only the negative claims about
14    Lear.  Ignore the positive and then say based on my research
15    of the companies in the field, this is a company that cannot
16    be trusted.  You know, here's the company that I recommend.
17    Go check out Regal.  And those are in the exhibits to the
18    complaint; but case after case, including ones they cite, *j2
19    Global*, for example, where the Court denied the anti-SLAPP
20    makes it clear that reviews where you positively recommend a
21    company without providing that nexus between you and the
22    reviewer are actionable as false advertising.  You have other
23    cases, such as *Univision Music* which we cite
24    *Gillette vs. Norelco*, *Oil Heat Institute*.  All of them say
25    that omissions can be actionable if it creates an inference
```

1    that is not correct.  Also, the *K & N* case that they cite

2    compiles various cases that say -- where you have omissions

3    or failures to disclose, that might not otherwise be

4    actionable.  They are if what you're doing is making a

5    superiority claim where the case -- where the -- where the

6    failure to disclose makes that superiority claim weakened as

7    a result.  So in this case, we've -- particularly at the

8    pleading stage, we have more than alleged that there are

9    false statements being made and even if all that there was

10   was an omission or failure to disclose, those are still

11   actionable, given the circumstances here and the cases cited

12   in our briefs.

13           Thank you.

14           MS. RANAHAN:  And, Your Honor, this Court made a

15   decision, *Homeland House Lands* [sic] in which it was a case

16   from 2014 in which it held that merely alleging the defendant

17   said negative things about one's product is not stating a

18   case for false advertising, and dismissed on a 12(b)(6)

19   because the allegations were too ambiguous.

20           In here, they're -- they're not even alleging that

21   any of the negative things are false.  They're not -- what

22   some of the affiliates do is they will link to the actual

23   Better Business Bureau which may send certain reviews, and

24   they haven't taken any issue with the truth of any of those

25   reviews.  They haven't even claimed that any of -- they

```
 1    haven't alleged that any of those reviews in the complaint
 2    are false.  They actually admitted -- there's no false
 3    statements about Lear in this case.  So we're back to just
 4    the omissions.  And omissions just -- there are cases that
 5    they've cited where omissions in conjunction with statements
 6    that create a false impression about the product can be
 7    enough.  And for instance, there is a case where there was
 8    a -- someone called a silver -- it was a musician and he had
 9    a Silver Fox nickname at the time.  It came up later when
10    his -- I guess he had some salt-and-pepper hair.  So the
11    selection to use the Silver Fox nickname for this musician
12    created a misleading impression about the product, that it
13    was a recent recording.  Well CBS sued and said, you are
14    selling this like it's a recent recording.  And we have the
15    rights.  Really these sound recordings are from 15 years ago.
16    You're misleading the public, because by using his nickname
17    and also including a photograph of him from the present time,
18    the product -- the product people are buying, they're being
19    misled about what that is.  There's no claim about that here.
20    There's no claim that what people are buying from Lear,
21    there's a -- there's a misleading statement about the
22    product.  It's just not -- I mean, the fact that there are
23    omissions that they don't find adequate which since the
24    complaint has been filed, are in compliance with Your Honor's
25    injunction.  They all -- Regal has instructed all affiliates
```

```
 1    to do that.  All the Web sites at issue now do that; but
 2    setting that aside and they're -- and they're trying to reach
 3    past for damages from before the injunction...
 4              There are just omissions alone when they're not
 5    even about the product, are not enough.  And we cited several
 6    cases.  And I -- and just the vagueness of the false
 7    statement like Your Honor's decision in Homeland
 8    House Land [sic].
 9              THE COURT:  Thank you.  I understand.
10              Just briefly...
11              MR. WAIS:  Yes, very briefly.
12              Two points.  And we can deal with this in the
13    American Bullion, obviously; but not all Web sites have
14    complied.  And those that have complied, have done so in a
15    way that is not conspicuous.  So they place the disclosure in
16    a font that's unreadable.  They place it in a portion of the
17    Web site where no one would notice it going directly to the
18    Web site.  So I just want to miss -- or correct that
19    misstatement.  I mean, if -- and as for the Homeland --
20    Homeland Housewares case, what we were talking about was
21    Regal put out a commercial that said, Hey, go with us because
22    Lear had this complaint filed against it.  That would be a
23    different story.  That would be the Homeland Housewares case.
24    What we have here is we have Regal and the other defendants
25    creating a program where someone is going, Hi.  My name is
```

```
 1   John when his name is not John.  I'm a recent retiree when
 2   he's not a recent retiree.  Here's my picture of me and my
 3   loving family when he's a high school student from Singapore.
 4   I've done the research.  I've done the homework.  And after
 5   all the research and homework, I've decided that Regal is the
 6   best and Lear should not be trusted or you should not use
 7   them.  .so invest with Regal.  Here's the links to their
 8   Web site and go on.
 9           THE COURT:  No, I understand.  That's fine.  I
10   understand.
11           Thank you.
12           MR. WAIS:  It's apples and oranges.
13           THE COURT:  Thank you.  It's submitted.
14               (Whereupon proceeding adjourned.)
15                         - -
16
17
18
19
20
21
22
23
24
25
```

1      **C E R T I F I C A T E**

2

3

4

5      LEAR CAPITAL, INC.                    :

6                    vs.                      :   No. CV 15-00869-DDP

7      REGAL ASSETS, LLC                      :

8

9

10     I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE

11     UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

12     CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

13     TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

14     CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

15     PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

16     TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

17     OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

18     FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

19     REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

20     REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

21

22     /S/_____          07/14/2015

23     MARIA R. BUSTILLOS                  DATE
       OFFICIAL REPORTER
24

25

**$**

**$100,000** [1] - 17:24

**/**

**/S** [1] - 31:22

**0**

**07/14/2015** [1] - 31:22

**1**

**1** [1] - 6:8
**10:59** [1] - 4:3
**11377** [2] - 2:5, 2:9
**12(b)(6** [3] - 22:24,
   25:9, 27:18
**12(b)(6)** [2] - 22:21,
   23:5
**12254** [1] - 1:23
**125** [4] - 9:20, 11:6,
   11:13, 14:17
**15** [1] - 28:15
**15-00869-DDP** [3] -
   1:10, 4:4, 31:6

**2**

**20** [2] - 15:14, 17:13
**2014** [1] - 27:16
**2015** [2] - 1:20, 4:1
**213** [1] - 1:25
**213)615-1700** [2] -
   2:16, 2:20
**28** [1] - 31:13

**3**

**30** [1] - 17:23
**310)312-2000** [2] - 2:6,
   2:10
**312** [1] - 1:24
**333** [2] - 2:14, 2:18
**38TH** [2] - 2:15, 2:19

**4**

**4** [1] - 3:7
**404** [1] - 1:24

**5**

**5** [1] - 4:1
**50** [1] - 11:14
**50,000** [1] - 17:24

**7**

**753** [1] - 31:12

**8**

**8** [1] - 1:20
**894-2739** [1] - 1:25

**9**

**90012** [1] - 1:25
**90064-1683** [2] - 2:6,
   2:10
**90071** [2] - 2:15, 2:19

**A**

**A.M** [1] - 4:3
**AARON** [1] - 2:8
**Aaron** [1] - 4:7
**able** [1] - 13:17
**ABOVE** [1] - 31:15
**ABOVE-ENTITLED** [1]
   - 31:15
**absolutely** [1] - 5:3
**actionable** [7] - 17:12,
   25:18, 25:24, 26:22,
   26:25, 27:4, 27:11
**actor** [1] - 14:2
**actual** [4] - 10:5,
   11:16, 24:14, 27:22
**addition** [1] - 6:11
**address** [1] - 13:4
**adequacy** [1] - 19:19
**adequate** [1] - 28:23
**adequately** [1] - 18:22
**adjourned** [1] - 30:14
**admit** [1] - 15:2
**admitted** [1] - 28:2
**advertise** [1] - 13:17
**advertisements** [1] -
   12:20
**advertising** [10] -
   5:14, 12:7, 13:12,
   15:6, 23:1, 23:22,
   25:13, 26:22, 27:18
**advice** [1] - 18:3
**advocacy** [1] - 12:19
**affiliate** [13] - 4:23,
   5:5, 5:6, 6:5, 6:12,
   13:4, 15:11, 15:13,
   15:18, 15:19, 18:13,
   21:9, 23:12
**affiliated** [1] - 20:21
**affiliates** [13] - 6:11,
   6:21, 6:25, 7:11, 9:5,
   9:12, 14:11, 16:8,
   22:5, 25:14, 26:3,
   27:22, 28:25
**affiliation** [2] - 20:21,
   26:7
**affirmatively** [1] -

25:24
**agent** [3] - 13:14,
   13:18, 14:3
**agents** [1] - 25:14
**ago** [1] - 28:15
**agree** [1] - 21:23
**ahead** [6] - 5:13, 11:3,
   12:1, 14:23, 16:11,
   21:20
**al** [1] - 4:5
**allegation** [2] - 10:9,
   24:14
**allegations** [8] -
   11:16, 23:20, 24:5,
   24:15, 24:16, 25:9,
   25:11, 27:19
**allege** [2] - 10:6, 23:8
**alleged** [5] - 5:3, 15:4,
   23:8, 27:8, 28:1
**allegedly** [1] - 10:10
**alleges** [1] - 25:12
**alleging** [3] - 16:14,
   27:16, 27:20
**allowed** [1] - 17:11
**alone** [1] - 4:3
**alter** [3] - 23:22, 23:23, 29:4
**alter** [3] - 24:15,
   24:17, 24:18
**Amazon** [1] - 15:17
**amazon.com** [2] -
   15:14, 15:16
**ambiguous** [1] - 27:19
**amendment** [1] - 12:7
**American** [9] - 6:2,
   10:5, 10:7, 10:8,
   15:10, 16:15, 19:15,
   23:14, 29:13
**amount** [1] - 14:16
**analysis** [5] - 9:10,
   10:16, 13:3, 13:6,
   21:23
**AND** [3] - 31:10,
   31:13, 31:15
**AND/OR** [1] - 31:19
**ANGELES** [7] - 1:19,
   1:25, 2:6, 2:10, 2:15,
   2:19, 4:1
**anti** [15] - 4:20, 5:23,
   5:24, 6:2, 6:17, 9:10,
   10:4, 10:13, 13:9,
   14:21, 19:5, 21:22,
   22:1, 22:17, 26:19
**anti-SLAPP** [15] -
   4:20, 5:23, 5:24, 6:2,
   6:17, 9:10, 10:4,
   10:13, 13:9, 14:21,
   19:5, 21:22, 22:1,
   22:17, 26:19
**ANY** [1] - 31:18
**apparent** [1] - 14:2
**appearance** [2] - 17:2,
   17:3
**apples** [1] - 30:12
**apply** [2] - 21:13,
   21:23
**ARE** [1] - 31:19

**arena** [1] - 18:7
**argument** [5] - 7:3,
   7:4, 12:4, 14:10,
   25:6
**arguments** [3] - 11:1,
   17:16, 23:3
**aside** [1] - 29:2
**asserted** [1] - 12:4
**Assets** [2] - 4:5, 4:23
**ASSETS** [5] - 1:12,
   1:17, 2:13, 3:5, 31:7
**assume** [1] - 7:13
**AT** [1] - 4:3
**attached** [2] - 5:7,
   9:21
**AVENUE** [2] - 2:14,
   2:18

**B**

**bad** [6] - 7:4, 7:5, 8:1,
   9:3, 9:9
**based** [6] - 14:4, 14:5,
   18:21, 21:10, 22:6,
   26:14
**basis** [1] - 11:21
**become** [2] - 11:8,
   18:8
**BEHALF** [2] - 2:4, 2:12
**behalf** [3] - 6:3, 6:4,
   6:5
**believes** [1] - 6:14
**below** [1] - 26:12
**best** [1] - 30:6
**better** [3] - 26:4, 26:6,
   26:9
**Better** [3] - 6:22, 7:12,
   27:23
**between** [6] - 4:24,
   9:7, 19:22, 23:6,
   23:11, 26:21
**biased** [1] - 25:20
**big** [1] - 19:5
**bit** [1] - 4:25
**blog** [2] - 9:22, 21:4
**blogs** [2] - 6:7, 21:2
**borne** [1] - 25:10
**BOULEVARD** [2] -
   2:5, 2:9
**brief** [1] - 13:22
**briefing** [1] - 13:19
**briefly** [1] - 29:11
**briefly..** [1] - 29:10
**briefs** [1] - 27:12
**bringing** [1] - 6:3
**brings** [1] - 14:15
**broader** [1] - 18:16
**brokerage** [1] - 7:18
**brought** [1] - 21:5
**bucks** [3] - 17:13,
   17:23
**build** [1] - 6:12
**Bullion** [10] - 6:2,
   8:23, 10:5, 10:7,
   10:8, 15:10, 16:15,

19:15, 23:14, 29:13
**burden** [1] - 10:16
**burden-shifting** [1] -
   10:16
**Bureau** [2] - 7:12,
   27:23
**Business** [3] - 6:22,
   7:12, 27:23
**business** [4] - 9:3,
   9:4, 9:5, 9:7
**BUSTILLOS** [1] - 1:22,
   31:10, 31:23
**buy** [4] - 6:23, 8:23,
   16:5, 18:5
**buying** [2] - 28:18,
   28:20
**BY** [8] - 1:16, 1:18,
   2:5, 2:8, 2:13, 2:18,
   3:4, 3:7

**C**

**C.S.R** [1] - 1:23
**CALIFORNIA** [9] - 1:2,
   1:19, 1:25, 2:6, 2:10,
   2:15, 2:19, 4:1,
   31:12
**campaigns** [1] - 14:13
**cannot** [2] - 11:9,
   26:15
**CAPITAL** [3] - 1:7, 2:4,
   31:5
**Capital** [2] - 4:5, 5:5
**captive** [1] - 15:15
**carcinogens** [1] -
   22:16
**case** [32] - 4:24, 5:2,
   5:4, 6:2, 10:5, 10:6,
   12:3, 15:3, 15:6,
   18:11, 18:15, 18:18,
   19:6, 19:7, 20:5,
   21:7, 21:16, 23:14,
   24:14, 25:17, 26:18,
   27:1, 27:5, 27:7,
   27:15, 27:18, 28:3,
   28:7, 29:20, 29:23
**CASE** [2] - 1:16, 3:4
**cases** [11] - 4:22, 4:24,
   12:17, 20:5, 23:18,
   25:22, 26:23, 27:2,
   27:11, 28:4, 29:6
**CBS** [1] - 28:13
**CENTRAL** [2] - 1:2,
   31:11
**certain** [5] - 23:12,
   23:13, 24:20, 24:21,
   27:23
**CERTIFY** [1] - 31:12
**challenging** [3] - 12:8,
   12:9, 12:10
**CHARGED** [1] - 31:18
**check** [1] - 26:17
**chose** [1] - 24:20
**Church** [1] - 20:4
**CIRCUIT** [1] - 31:18

circumstances [1] - 27:11
cite [5] - 22:11, 22:13, 26:18, 26:23, 27:1
cited [6] - 20:4, 23:18, 25:22, 27:11, 28:5, 29:5
claim [7] - 5:14, 22:14, 26:3, 27:5, 27:6, 28:19, 28:20
claimed [2] - 20:16, 27:25
claiming [1] - 20:21
CLAIMS [2] - 1:17, 3:6
claims [6] - 9:25, 10:3, 11:20, 11:22, 13:3, 26:13
clear [5] - 19:1, 25:7, 25:11, 25:17, 26:20
CLERK [1] - 4:4
click [2] - 13:23, 18:24
click-through [1] - 18:24
client [1] - 12:24
client's [1] - 6:23
clients [2] - 7:20, 9:17
co [1] - 18:12
co-owner [1] - 18:12
CODE [1] - 31:13
Coke [1] - 22:15
colleague [1] - 25:6
collectibles [2] - 6:19, 8:25
combined [1] - 23:15
comments [1] - 16:21
commercial [4] - 16:1, 21:12, 21:22, 29:21
commission [3] - 14:4, 14:5, 22:6
commissions [3] - 15:20, 21:14, 22:4
commonsense [2] - 19:1, 22:15
communicate [2] - 24:1, 24:20
communicates [1] - 6:6
communicating [3] - 6:22, 7:11, 9:6
Communications [1] - 21:8
compacts [1] - 25:10
companies [8] - 6:14, 6:15, 12:10, 15:13, 15:14, 15:19, 16:21, 26:15
company [13] - 7:18, 13:5, 13:16, 14:6, 15:4, 17:1, 17:10, 18:13, 18:15, 18:21, 26:15, 26:16, 26:21
compelling [1] - 21:25
compensated [3] - 16:20, 18:20, 21:10
compensation [2] -

16:20, 18:23
competitors' [1] - 15:5
compiles [1] - 27:2
complaint [7] - 6:8, 8:11, 24:22, 26:18, 28:1, 28:24, 29:22
COMPLAINT [2] - 1:18, 3:7
complaints [6] - 7:5, 7:12, 7:14, 7:19, 8:17, 25:8
completely [1] - 22:10
compliance [1] - 28:24
complied [2] - 29:14
concern [2] - 18:6, 18:15
concerning [1] - 25:16
conclusion [1] - 22:16
conclusory [1] - 24:17
conduct [1] - 8:22
conducted [1] - 17:3
CONFERENCE [2] - 31:17, 31:20
CONFORMANCE [2] - 31:16, 31:19
confronting [1] - 14:19
confused [1] - 20:20
confusion [1] - 20:20
conjunction [2] - 23:16, 28:5
connected [1] - 12:23
connection [3] - 23:6, 23:11, 24:13
considered [2] - 10:11
conspicuous [1] - 29:15
consumer [7] - 6:10, 12:14, 12:16, 16:7, 18:17, 19:4
consumers [2] - 9:7, 12:19
content [1] - 25:13
context [2] - 7:16, 8:10
continuum [2] - 17:17, 17:19
contradictory [1] - 20:22
correct [5] - 5:21, 9:4, 15:3, 27:1, 29:18
CORRECT [1] - 31:14
Court [4] - 13:10, 25:22, 26:19, 27:14
COURT [70] - 1:1, 1:22, 4:3, 4:10, 4:15, 4:16, 4:25, 5:9, 5:11, 5:13, 5:17, 5:20, 5:22, 6:20, 7:3, 7:7, 7:9, 7:13, 7:16, 7:22, 8:3, 8:6, 8:9, 8:14, 8:16, 8:19, 9:3, 9:16, 10:16, 10:19, 10:22, 10:25, 11:7, 11:12, 11:23, 12:1, 12:23,

14:20, 14:23, 15:16, 15:22, 15:24, 16:10, 17:7, 17:18, 17:25, 18:23, 19:8, 19:11, 19:18, 19:21, 19:25, 20:10, 20:23, 21:1, 21:18, 22:20, 22:23, 23:3, 24:6, 24:11, 24:23, 25:2, 25:3, 26:8, 29:9, 30:9, 30:13, 31:10, 31:11
court [5] - 11:8, 12:5, 13:11, 19:16, 24:8
COURTHOUSE [1] - 1:23
courts [2] - 16:3, 20:5
create [2] - 13:7, 28:6
created [1] - 14:9, 28:12
creates [2] - 14:11, 26:25
creating [2] - 17:2, 29:25
credential [1] - 11:18
credentials [1] - 12:12
critical [1] - 11:5
customer [3] - 7:23, 12:21, 22:12
customers [3] - 7:17, 17:6, 22:8
CV [3] - 1:10, 4:4, 31:6

D

damage [2] - 20:9, 20:13
damaged [4] - 10:15, 20:6, 20:8, 20:11
damages [6] - 10:2, 20:1, 20:3, 20:7, 22:2, 29:3
damaging [1] - 22:18
DATE [1] - 31:23
deal [3] - 5:25, 11:24, 29:12
dealt [2] - 4:22, 21:16
DEAN [1] - 1:5
decide [2] - 9:9, 20:8
decided [4] - 21:8, 23:12, 23:20, 30:5
decides [1] - 24:1
decision [4] - 21:21, 22:11, 27:15, 29:7
declaration [2] - 10:10, 13:20
declarations [1] - 13:5
defendant [3] - 4:16, 6:3, 27:16
DEFENDANT [2] - 1:18, 3:7
defendants [10] - 4:9, 4:12, 4:14, 15:3, 23:7, 23:11, 24:2, 24:14, 24:19, 29:24
Defendants [1] - 1:13

DEFENDANTS [3] - 1:16, 2:12, 3:4
defendants.. [1] - 4:17
defense [1] - 12:6
denied [3] - 21:21, 22:1, 26:19
DEPOSIT [1] - 31:19
determined [2] - 13:14, 17:4
Diana [1] - 4:14
DIANA [1] - 2:14
difference [3] - 4:24, 5:2, 9:7
different [5] - 8:24, 9:2, 11:15, 18:6, 29:23
direct [3] - 8:24, 14:7, 18:3
directly [5] - 14:8, 18:21, 22:5, 25:12, 29:17
director [1] - 18:12
disclose [9] - 17:13, 18:25, 19:3, 25:17, 25:23, 26:1, 27:3, 27:6, 27:10
disclosing [3] - 12:12, 12:19, 18:22
disclosure [5] - 19:13, 19:18, 19:19, 20:23, 29:15
disclosures [1] - 14:14
discount [1] - 13:13
discussing [1] - 15:21
dismiss [3] - 4:21, 5:24
DISMISS [2] - 1:16, 3:4
dismissed [2] - 21:15, 27:18
disparage [1] - 17:1
disprove [1] - 18:2
dispute [4] - 8:4, 8:9, 19:19, 23:23
disputed [1] - 13:7
distinguishes [1] - 6:1
district [1] - 21:17
DISTRICT [5] - 1:1, 1:2, 1:5, 31:11
DIVISION [1] - 1:3
DO [1] - 31:12
dollars [1] - 22:4
done [7] - 14:12, 14:16, 26:4, 26:5, 29:14, 30:4
down [5] - 4:25, 11:12, 19:6, 24:8, 26:11
draw [1] - 22:16

E

e-mail [1] - 13:4
earn [2] - 12:17, 17:23
earns [1] - 14:4

effective [1] - 13:18
ego [3] - 24:15, 24:17, 24:18
either [2] - 5:15, 26:10
element [1] - 24:16
embedded [1] - 14:14
employee [2] - 15:19, 20:16
employees [1] - 9:14
encouraged [1] - 24:3
engaged [4] - 13:21, 14:8, 16:4, 16:9
engines [1] - 13:25
entire [2] - 13:12, 15:5
ENTITLED [1] - 31:15
Erin [1] - 4:9
ERIN [1] - 2:13
ESQ [3] - 2:5, 2:9, 2:18
establish [1] - 11:22
et [1] - 4:5
evaluated [1] - 18:5
event [1] - 24:2
evidence [17] - 8:15, 8:20, 10:1, 10:2, 10:12, 10:14, 13:2, 13:8, 14:17, 20:3, 20:7, 22:3, 22:8, 24:4, 25:10
evidentiary [1] - 11:21
exact [1] - 12:18
exactly [1] - 26:2
example [2] - 25:22, 26:19
exception [6] - 11:1, 16:2, 21:13, 21:22
exchange [1] - 16:15
exclusive [3] - 13:16, 13:18
Exhibit [1] - 6:8
exhibits [5] - 5:6, 9:20, 9:21, 11:6, 11:13, 14:17, 21:3, 26:17
exist [1] - 22:9
experience [1] - 14:7
experts [1] - 26:6
explained [1] - 20:18
extensive [1] - 17:3

F

fact [10] - 9:18, 13:7, 13:14, 20:13, 21:10, 21:13, 24:19, 26:1, 26:7, 28:22
facts [2] - 21:24, 21:25
factual [2] - 6:17, 24:16
failure [4] - 25:23, 25:25, 27:6, 27:10
failures [1] - 25:17, 27:3
fair [1] - 18:8
fake [2] - 23:7, 24:4

fall [1] - 13:25
false [47] - 5:3, 5:8, 5:14, 5:15, 5:18, 5:25, 10:6, 11:14, 11:18, 12:7, 12:11, 12:12, 12:23, 13:12, 14:25, 15:4, 15:6, 16:13, 16:17, 16:23, 16:25, 20:12, 22:25, 23:1, 23:9, 23:10, 23:14, 23:22, 23:24, 24:13, 25:12, 25:13, 25:18, 25:19, 26:2, 26:22, 27:9, 27:18, 27:21, 28:2, 28:6, 29:6
family [1] - 30:3
far [5] - 6:2, 15:25, 21:24, 23:6, 24:15
fast [2] - 5:9, 11:7
federal [1] - 13:10
FEE [1] - 31:18
FEES [1] - 31:18
Felix [18] - 6:4, 9:6, 9:15, 10:1, 10:15, 11:17, 11:21, 12:4, 12:13, 12:19, 15:9, 16:4, 16:6, 19:13, 20:15, 22:5, 24:3, 25:11
FELIX [4] - 1:17, 1:18, 3:5, 3:7
Felix's [3] - 9:22, 12:9, 16:16
fictionalized [1] - 22:10
field [2] - 26:6, 26:15
FILED [4] - 1:16, 1:18, 3:4, 3:7
filed [5] - 9:13, 19:17, 19:23, 28:24, 29:22
fine [2] - 20:1, 22:20, 30:9
fines [1] - 8:21
first [7] - 8:7, 9:10, 9:24, 11:24, 12:7, 13:1, 22:25
five [3] - 4:4, 17:23, 22:19
FLOOR [2] - 2:15, 2:19
font [1] - 29:16
FOR [3] - 31:10, 31:11, 31:18
FOREGOING [1] - 31:13
FORMAT [1] - 31:16
forth [1] - 25:15
forward [2] - 10:14, 13:8
forwards [1] - 14:4
foundation [1] - 6:13
Fox [2] - 28:9, 28:11
fraud [1] - 10:8
free [5] - 6:9, 9:12, 12:3, 12:6, 16:7

fruition [1] - 20:18
FTC [1] - 18:25
full [1] - 18:2

## G

Gallagher [2] - 24:3, 25:11
GALLAGHER [2] - 1:17, 3:5
game [1] - 18:9
general [4] - 6:7, 6:12, 18:16, 18:18
generates [1] - 17:22
Gillette [1] - 26:24
gimmicks [1] - 6:19
given [1] - 27:11
Global [1] - 26:19
Gold [1] - 8:23
gold [11] - 6:7, 6:10, 6:19, 8:18, 8:23, 8:24, 8:25, 12:10, 14:5, 16:5
goods [1] - 16:5
GRAND [2] - 2:14, 2:18
granted [1] - 19:23
granting [1] - 10:12
gray [1] - 17:16
great [3] - 6:15, 6:17
guess [2] - 18:6, 28:10

## H

hair [1] - 28:10
head [1] - 21:16
head-on [1] - 21:16
Healthcare [1] - 25:23
hear [1] - 4:16
Heat [1] - 26:24
HELD [1] - 31:15
held [2] - 16:3, 27:16
HEREBY [1] - 31:12
Hi [1] - 29:25
high [1] - 30:3
himself [2] - 11:17, 13:22
hired [1] - 15:17
Homeland [3] - 27:15, 29:7, 29:19, 29:20, 29:23
homework [2] - 30:4, 30:5
honestly [1] - 24:6
Honor [29] - 4:6, 4:8, 4:11, 4:13, 4:18, 4:22, 5:1, 5:10, 6:24, 10:5, 10:11, 11:25, 12:3, 12:25, 14:22, 14:24, 16:12, 17:15, 18:10, 19:10, 19:12, 19:14, 19:23, 19:24, 20:14, 21:19, 22:22, 22:24, 27:14

Honor's [2] - 28:24, 29:7
HONORABLE [1] - 1:5
House [2] - 27:15, 29:8
Housewares [2] - 29:20, 29:23
HUGHES [2] - 2:14, 4:13
Hughes [1] - 4:14
hundreds [1] - 22:3
hyperlink [1] - 14:15

## I

idea [2] - 12:6, 14:1
identifying [1] - 24:21
ignore [1] - 26:14
II [2] - 13:2, 13:7
image [1] - 11:15
IMF [6] - 9:23, 12:9, 13:21, 13:24, 16:18, 21:4
IMF.org [1] - 6:9
implication [2] - 15:8, 16:1
impression [2] - 28:6, 28:12
IN [5] - 4:3, 31:10, 31:15, 31:16, 31:19
inadequate [1] - 14:13
INC [3] - 1:7, 2:4, 31:5
Inc [1] - 4:5
incident [1] - 10:8
including [11] - 6:8, 7:2, 9:5, 14:13, 14:14, 22:5, 23:10, 26:18, 28:17
incorrect [1] - 25:25
independence [2] - 16:19, 17:8
independent [7] - 12:16, 13:1, 14:2, 16:22, 18:3, 18:14, 26:4
indicates [1] - 19:2
individual [1] - 6:3
individually [1] - 10:1
individuals [1] - 9:14
induce [1] - 16:25
industry [1] - 6:10
inference [1] - 26:25
information [3] - 6:10, 16:7, 24:21
informing [1] - 9:6
injunction [6] - 10:12, 19:15, 19:23, 28:25
injunction.. [1] - 29:3
injunctive [1] - 22:14
instance [1] - 28:7
Institution [1] - 26:24
instructed [1] - 28:25
integrity [1] - 15:12
interest [1] - 7:11
Internet [1] - 13:23

invest [1] - 30:7
investigation [1] - 17:4
IS [2] - 31:13, 31:16
issue [14] - 5:3, 5:6, 7:11, 8:8, 9:9, 9:11, 10:24, 14:25, 21:3, 21:5, 22:21, 24:24, 27:24, 29:1
item [1] - 4:4
itself [1] - 16:24

## J

j2 [5] - 21:8, 21:21, 22:10, 26:18
Jameson [1] - 23:16
job [1] - 7:24
John [2] - 30:1
JUDGE [1] - 1:5
Judge [1] - 21:8
JUDICIAL [2] - 31:17, 31:20
JUNE [1] - 1:20, 4:1

## K

keep [3] - 11:9, 24:7, 25:8
KELLY [4] - 1:16, 1:18, 3:4, 3:7
Kelly [2] - 6:4, 9:6
kinds [1] - 18:8
KNUPP [2] - 2:4, 2:8

## L

lack [2] - 16:20, 26:6
Land [1] - 29:8
Lands [1] - 27:15
language [4] - 14:12, 19:14, 19:16
large [1] - 7:18
law [4] - 11:20, 23:18, 25:16, 25:17
LAW [2] - 1:17, 3:6
lawsuit [4] - 5:23, 11:20, 19:17, 19:23
lawsuits [3] - 8:21, 9:13, 9:19
lead [1] - 16:8
leads [1] - 16:8
Lear [7] - 4:5, 5:5, 5:8, 15:6, 15:7, 16:24, 21:6, 22:18, 23:9, 23:25, 25:21, 26:4, 26:9, 26:11, 26:13, 26:14, 28:3, 28:20, 29:22, 30:6
LEAR [3] - 1:7, 2:4, 31:5
Lear's [5] - 5:15, 6:8, 14:14
left [2] - 23:17, 23:19

legal [1] - 18:7
less [2] - 13:10, 21:24 3 4
LESS [1] - 31:18
level [1] - 17:10
LEXIS [1] - 22:13
lie [1] - 7:24
liken [1] - 12:14
line [1] - 17:16
link [2] - 23:11, 27:22
links [1] - 30:7
LLC [6] - 1:12, 1:17, 2:13, 3:5, 4:5, 31:7
LLP [2] - 2:13, 2:17
location [1] - 20:24
logo [1] - 14:14
look [4] - 7:17, 9:20, 9:25, 11:4
looked [1] - 23:15
LOS [7] - 1:19, 1:25, 2:6, 2:10, 2:15, 2:19, 4:1
love [1] - 13:25
loving [1] - 30:3
low [1] - 13:9

## M

machine [2] - 12:11, 13:12
made.. [1] - 22:2
mail [1] - 13:4
manager [1] - 13:5
manner [1] - 24:17
MARIA [3] - 1:22, 31:10, 31:23
market [3] - 6:7, 9:2, 13:17
marketer [1] - 15:13
marketers [2] - 4:23, 21:9
marketing [6] - 6:5, 12:11, 15:11, 15:20, 18:12
mass [1] - 14:16
material [3] - 10:9, 26:1
materials [1] - 13:22
matter [2] - 6:20, 23:18
MATTER [1] - 31:15
mean [7] - 8:6, 15:16, 16:16, 18:2, 23:13, 28:22, 29:19
meant [1] - 21:12
mention [1] - 20:14
mentioned [1] - 14:10
merely [1] - 27:16
merits [2] - 9:8, 9:25
metals [2] - 14:6, 14:8
MICHAEL [1] - 2:8
might [5] - 17:9, 18:16, 23:20, 23:21, 27:3
million [1] - 8:11
millions [1] - 22:4

**mind** [1] - 25:8
**misdirected** [1] - 14:15
**misleading** [6] - 5:8, 23:8, 25:24, 28:12, 28:16, 28:21
**misled** [3] - 10:11, 12:20, 28:19
**miss** [1] - 29:18
**misstatement** [1] - 29:19
**MITCHELL** [2] - 2:4, 2:8
**model** [3] - 9:3, 9:4, 9:5
**models** [1] - 9:8
**MONDAY** [2] - 1:20, 4:1
**money** [1] - 15:9
**month** [1] - 17:24
**morning** [7] - 4:6, 4:8, 4:10, 4:11, 4:13, 4:15, 4:18
**motion** [8] - 4:21, 5:24, 6:17, 10:4, 13:9, 19:6, 21:22
**MOTION** [4] - 1:16, 1:17, 3:4, 3:6
**motions** [1] - 4:19
**move** [2] - 22:21
**MR** [18] - 4:6, 4:11, 7:8, 11:25, 12:2, 12:25, 16:12, 17:15, 17:19, 18:10, 18:25, 19:10, 21:21, 22:22, 25:5, 26:10, 29:11, 30:12
**MS** [49] - 4:8, 4:13, 4:18, 5:1, 5:10, 5:12, 5:14, 5:19, 5:21, 5:23, 6:21, 7:6, 7:10, 7:15, 7:21, 8:2, 8:4, 8:7, 8:13, 8:15, 8:17, 8:20, 9:4, 9:18, 10:18, 10:21, 10:23, 11:4, 11:10, 11:13, 14:22, 14:24, 15:18, 15:23, 15:25, 19:12, 19:20, 19:22, 20:2, 20:11, 20:25, 21:2, 22:24, 23:4, 24:10, 24:12, 25:1, 25:4, 27:14
**multiple** [2] - 12:25, 13:15
**multiple-year** [1] - 13:15
**Music** [1] - 26:23
**musician** [2] - 28:8, 28:11

**N**

**name** [9] - 11:15, 11:16, 11:18, 23:13, 23:21, 23:25, 29:25, 30:1
**names** [1] - 24:13
**narrow** [2] - 16:2, 16:3
**need** [2] - 19:3, 20:6
**needs** [1] - 18:25
**negative** [4] - 26:13, 27:17, 27:21
**neutral** [2] - 16:22, 18:14
**neutrality** [3] - 16:19, 17:2, 25:20
**never** [2] - 20:15, 20:18
**New** [1] - 12:15
**next** [1] - 22:21
**nexus** [2] - 24:24, 26:21
**nickname** [1] - 28:9, 28:11, 28:16
**nine** [2] - 9:13, 9:19
**nonexistence** [1] - 22:9
**Norelco** [1] - 26:24
**NORTH** [1] - 1:24
**nothing** [2] - 20:12, 21:6
**notice** [1] - 29:17
**nowhere** [1] - 16:5
**number** [4] - 8:12, 22:19, 26:11

**O**

**obviously** [1] - 29:13
**OF** [10] - 1:2, 1:15, 2:4, 2:12, 3:11, 31:14, 31:17, 31:20
**offer** [1] - 18:2
**OFFICIAL** [3] - 1:22, 31:10, 31:23
**Oil** [1] - 26:24
**OLYMPIC** [2] - 2:5, 2:9
**omission** [2] - 25:23, 27:10
**omissions** [11] - 23:13, 23:15, 23:17, 25:16, 26:25, 27:2, 28:4, 28:5, 28:23, 29:4
**ON** [2] - 2:4, 2:12
**once** [1] - 20:2
**one** [23] - 4:20, 5:2, 6:5, 8:11, 9:21, 9:22, 10:3, 10:21, 10:23, 11:8, 13:13, 13:17, 14:24, 17:20, 18:6, 19:24, 20:17, 20:25, 21:7, 22:19, 26:11, 29:17
**one's** [1] - 27:17
**ones** [2] - 21:25, 26:18
**opinion** [1] - 18:19
**opposite** [2] - 12:18, 14:3
**opposition** [1] - 15:2
**oppositions** [1] - 5:7
**oranges** [1] - 30:12
**org** [1] - 16:18
**ostensibly** [1] - 8:1
**Otero** [1] - 21:8
**otherwise** [1] - 27:3
**outlier** [1] - 21:15
**overall** [1] - 25:21
**overlap** [1] - 22:25
**own** [1] - 18:14
**owner** [6] - 13:3, 18:12, 20:15, 20:17, 20:19

**P**

**PAGE** [2] - 3:3, 31:16
**page** [2] - 21:4, 22:13
**pages** [2] - 13:24, 21:2
**paid** [6] - 12:13, 15:20, 17:14, 19:3, 22:4
**parcel** [1] - 13:11
**part** [7] - 10:20, 10:22, 10:23, 11:24, 13:2, 13:3, 13:11
**partially** [1] - 25:25
**participated** [1] - 25:12
**particular** [1] - 18:11
**particularly** [2] - 13:9, 22:17, 27:7
**party** [1] - 13:1
**past** [3] - 9:10, 9:24, 29:3
**paying** [1] - 12:18
**people** [12] - 7:22, 10:10, 12:17, 13:23, 18:1, 18:2, 20:20, 22:9, 23:20, 24:19, 28:18, 28:20
**pepper** [1] - 28:10
**Pepsi** [1] - 22:15
**percentage** [1] - 17:21
**perfectly** [1] - 19:1
**performs** [1] - 12:16
**perhaps** [1] - 17:17
**period** [1] - 13:15
**person** [3] - 8:11, 13:1, 14:4
**persona** [2] - 11:14, 23:7, 23:10
**personal** [3] - 6:7, 9:22, 21:4
**personally** [1] - 11:18
**personas** [2] - 12:11, 25:19
**phase** [2] - 13:2, 13:7
**photo** [1] - 24:20
**photograph** [1] - 28:17
**photos** [1] - 24:4
**phrase** [1] - 11:1
**picture** [7] - 19:5, 23:10, 23:12, 23:16,
**pictures** [1] - 24:13
**pierce** [3] - 14:24, 21:19, 25:7
**PIERCE** [13] - 2:5, 4:6, 11:25, 12:2, 12:25, 16:12, 17:15, 17:19, 18:10, 18:25, 19:10, 21:21, 22:22
**Pierce** [2] - 4:7
**place** [2] - 29:15, 29:16
**plaintiff** [1] - 4:7
**PLAINTIFF'S** [2] - 1:17, 3:6
**PLAINTIFFS** [1] - 2:4
**plaintiffs** [8] - 4:20, 6:16, 6:25, 8:4, 8:24, 9:13, 19:25, 21:15
**Plaintiffs** [1] - 1:8
**pleading** [1] - 27:8
**point** [15] - 5:25, 9:23, 15:1, 17:17, 19:5, 19:13, 20:17, 21:7, 22:2, 22:11, 22:17, 23:4, 24:12, 26:11, 26:12
**point.** [1] - 16:13
**pointed** [1] - 7:25
**points** [1] - 22:17
**Ponzi** [1] - 16:15
**portion** [1] - 29:16
**position** [1] - 18:13
**positive** [1] - 26:14
**positively** [2] - 25:21, 26:20
**post** [1] - 13:22
**precious** [1] - 14:8
**PREGERSON** [1] - 1:5
**preliminary** [2] - 10:12, 19:15
**present** [1] - 28:17
**presented** [5] - 13:2, 21:24, 21:25, 22:3, 22:8
**PRESIDING** [1] - 1:5
**pressure** [1] - 9:19
**pretending** [1] - 18:13
**pretty** [1] - 17:10
**prevail** [1] - 13:8
**prevents** [1] - 9:16
**primarily** [3] - 13:21, 16:4, 16:9
**primary** [1] - 13:23
**problem** [1] - 11:7
**proceeding** [1] - 30:14
**PROCEEDINGS** [2] - 1:15, 31:15
**proceedings** [2] - 12:5, 22:13
**process** [1] - 22:17
**produced** [2] - 14:16, 20:3
**product** [12] - 12:21, 23:2, 23:24, 23:25,
**23:20, 23:25, 30:2**
**pictures** [1] - 24:13
**pierce** [3] - 14:24, 21:19, 25:7
**place** [2] - 29:15, 29:16
**opposition** [1] - 15:2

**products** [6] - 5:16, 6:14, 6:24, 15:5, 18:4, 23:2
**program** [2] - 17:14, 29:25
**programs** [1] - 6:13
**promote** [2] - 6:13, 14:1
**promotes** [1] - 6:11
**promoting** [1] - 18:14
**proposing** [2] - 21:11, 21:12
**protected** [1] - 12:7
**prove** [1] - 19:7
**provide** [1] - 25:13
**provider** [2] - 17:5
**provides** [1] - 6:9
**providing** [2] - 16:7, 26:21
**public** [7] - 7:10, 8:8, 9:6, 9:9, 9:11, 10:24, 28:16
**purchase** [2] - 14:6, 16:25
**purporting** [3] - 17:23, 18:2, 26:3
**purports** [1] - 18:11
**purpose** [1] - 13:23
**PURSUANT** [1] - 31:12
**put** [11] - 8:10, 8:20, 9:19, 16:16, 19:14, 19:24, 20:7, 20:9, 22:6, 23:7, 29:21
**puts** [1] - 12:17

**Q**

**questioning** [1] - 17:25
**quickly** [1] - 24:7
**quite** [1] - 14:3

**R**

**Ranahan** [3] - 4:9, 14:10, 22:2
**RANAHAN** [50] - 2:13, 4:8, 4:18, 5:1, 5:10, 5:12, 5:14, 5:19, 5:21, 5:23, 6:21, 7:6, 7:8, 7:10, 7:15, 7:21, 8:2, 8:4, 8:7, 8:13, 8:15, 8:17, 8:20, 9:4, 9:18, 10:18, 10:21, 10:23, 11:4, 11:10, 11:13, 14:22, 14:24, 15:18, 15:23, 15:25, 19:12, 19:20, 19:22, 20:2, 20:11, 20:25, 21:2, 22:24, 23:4, 24:10, 24:12, 25:1,

25:4, 27:14
**rank** [1] - 26:10
**ranking** [2] - 12:18,
26:10
**reach** [1] - 29:2
**reached** [1] - 10:20
**read** [2] - 6:16, 7:19
**real** [1] - 4:24
**really** [6] - 11:5, 21:16,
24:6, 24:9, 24:11,
28:15
**reason** [1] - 24:18
**recent** [4] - 28:13,
28:14, 30:1, 30:2
**recommend** [2] -
26:16, 26:20
**recommendation** [2] -
19:2, 19:3
**recommending** [1] -
25:22
**record** [1] - 14:3
**recording** [2] - 28:13,
28:14
**recordings** [1] - 28:15
**recruit** [2] - 15:10,
16:8
**recruiter** [1] - 6:5
**recruitment** [1] - 14:9
**recruits** [1] - 6:11
**REDUCTION** [1] -
31:19
**Reeves** [1] - 23:16
**refused** [1] - 15:11
**REGAL** [5] - 1:12,
1:17, 2:13, 3:5, 31:7
**Regal** [30] - 4:5, 4:23,
6:4, 6:25, 9:15, 12:3,
12:13, 12:14, 12:18,
13:4, 13:18, 14:4,
14:15, 15:14, 17:4,
20:22, 22:19, 23:25,
24:3, 25:11, 25:22,
26:3, 26:8, 26:11,
26:17, 28:25, 29:21,
29:24, 30:5, 30:7
**Regal's** [1] - 23:2
**regarding** [1] - 16:19
**regardless** [1] - 21:13
**REGULATIONS** [2] -
31:16, 31:20
**rejected** [1] - 12:6
**relate** [2] - 11:14,
12:24
**related** [1] - 12:5
**relation** [1] - 8:18
**relationship** [2] -
17:10, 17:11
**reliance** [1] - 22:12
**relied** [1] - 16:23
**relief** [1] - 22:4
**relying** [1] - 19:4
**repeat** [1] - 25:5
**repeatedly** [1] - 12:4
**REPORTED** [1] -
31:14

**reported** [1] - 21:1
**reporter** [2] - 11:9,
24:8
**REPORTER** [3] - 1:22,
31:10, 31:23
**REPORTER'S** [1] -
1:15
**reports** [4] - 12:14,
12:16, 12:17, 18:17
**represent** [1] - 7:24
**representations** [2] -
16:19, 25:20
**representatives** [1] -
7:23
**reputation** [1] - 22:18
**reputations** [3] - 6:15,
6:16, 6:18
**required** [5] - 10:3,
10:13, 13:16, 20:4,
22:12
**requirement** [2] -
16:23, 16:24
**requires** [2] - 13:10,
16:3
**research** [4] - 26:5,
26:14, 30:4, 30:5
**respects** [1] - 12:25
**result** [1] - 27:7
**retiree** [2] - 30:1, 30:2
**review** [3] - 17:2, 17:9,
18:16
**reviewer** [1] - 26:22
**reviewers** [1] - 22:9
**reviewing** [1] - 16:21
**reviews** [11] - 6:23,
12:12, 16:22, 18:18,
18:21, 21:1, 26:13,
26:20, 27:23, 27:25,
28:1
**rights** [1] - 28:15
**ROOM** [1] - 1:24
**Rostamian** [1] - 4:12
**ROSTAMIAN** [2] -
2:18, 4:11
**Rule** [1] - 25:9
**rules** [1] - 19:1
**rulings** [1] - 13:14
**rumor** [1] - 22:15
**run** [1] - 21:5

**S**

**sale** [3] - 14:8, 17:21,
21:12
**sales** [7] - 9:2, 13:18,
14:3, 14:7, 15:21,
16:9, 21:10
**salt** [1] - 28:10
**salt-and-pepper** [1] -
28:10
**sanction** [1] - 19:16
**SAUL** [1] - 2:18
**Saul** [1] - 4:12
**scam** [1] - 6:24
**scams** [1] - 7:1

**scheme** [1] - 16:15
**school** [1] - 30:3
**Scientology** [1] - 20:5
**search** [1] - 13:25
**second** [1] - 13:13
**SECTION** [1] - 31:12
**section** [1] - 6:17
**select** [1] - 24:21
**selected** [1] - 24:20
**selection** [1] - 28:11
**sell** [3] - 9:1, 16:6,
16:9
**selling** [5] - 6:14, 6:18,
9:23, 16:4, 28:14
**send** [1] - 27:23
**sense** [1] - 18:16
**sentence** [1] - 11:8
**service** [3] - 7:23,
12:21, 17:4
**services** [2] - 17:5,
18:4
**SESSION** [1] - 4:3
**set** [1] - 25:15
**SETH** [1] - 2:5
**Seth** [1] - 4:7
**setting** [1] - 29:2
**several** [3] - 15:13,
20:5, 29:5
**shield** [1] - 13:16
**shifting** [1] - 10:16
**showed** [1] - 13:21
**showing** [1] - 13:11
**shows** [1] - 14:18
**shred** [1] - 20:3
**shrill** [1] - 15:15
**shut** [1] - 19:6
**sic** [1] - 27:15
**sic]** [1] - 29:8
**side** [1] - 17:20
**SILBERBERG** [2] -
2:4, 2:8
**silence** [1] - 7:1
**silenced** [1] - 9:13
**silver** [1] - 28:8
**Silver** [2] - 28:9, 28:11
**Singapore** [1] - 30:3
**site** [16] - 6:9, 6:12,
9:23, 13:20, 14:1,
16:6, 16:16, 16:18,
17:9, 19:4, 19:14,
21:4, 29:17, 29:18,
30:8
**sites** [14] - 5:5, 5:6,
14:10, 14:11, 14:12,
17:2, 17:24, 18:8,
18:16, 18:24, 21:11,
22:7, 29:1, 29:13
**Sites** [1] - 6:8
**situation** [6] - 12:15,
14:19, 17:22, 18:1,
18:20, 21:9
**SLAPP** [16] - 4:20,
5:23, 5:24, 6:2, 6:7,
9:10, 10:4, 10:13,
11:24, 13:9, 14:21,

19:5, 21:22, 22:1,
22:17, 26:19
**slippery** [1] - 17:7,
17:12
**slope** [2] - 17:8, 17:12
**slow** [2] - 4:25, 11:12
**smear** [2] - 12:12,
14:13
**smearing** [1] - 25:21
**snapshots** [1] - 22:5
**so-called** [1] - 11:14
**sold** [1] - 8:18
**someone** [10] - 8:22,
14:7, 18:5, 18:11,
18:19, 19:2, 20:13,
24:1, 28:8, 29:25
**soon** [1] - 17:10
**sorry** [5] - 5:10, 11:10,
11:11, 24:10
**sort** [2] - 17:12, 23:16
**sound** [1] - 28:15
**SOUTH** [2] - 2:14,
2:18
**speaking** [1] - 24:7
**specific** [8] - 10:8,
12:11, 15:4, 16:23,
17:21, 18:20, 19:14,
24:15
**specifically** [3] - 12:5,
12:8, 13:13
**speech** [3] - 7:1, 12:3,
12:6
**spreading** [1] - 6:22
**SPRING** [1] - 1:24
**stage** [3] - 22:12, 25:9,
27:8
**standard** [1] - 13:9
**started** [1] - 22:15
**state** [4] - 11:20,
13:11, 15:2, 25:23
**STATE** [2] - 1:17, 3:6
**statement** [21] - 5:3,
5:15, 6:1, 10:6, 10:7,
10:11, 14:25, 15:4,
15:6, 16:13, 16:15,
16:24, 20:14, 20:16,
23:1, 23:15, 23:24,
25:24, 26:1, 28:21,
29:7
**statements** [13] - 5:8,
12:13, 12:24, 16:17,
16:18, 16:25, 23:9,
25:19, 26:8, 26:12,
27:9, 28:3, 28:5
**STATES** [6] - 1:1,
1:23, 31:11, 31:13,
31:17, 31:20
**stating** [1] - 27:17
**STENOGRAPHICAL
LY** [1] - 31:14
**step** [1] - 9:10
**still** [2] - 20:1, 27:10
**stock** [1] - 7:18
**story** [1] - 29:23
**strategies** [1] - 6:12

**STRAWN** [2] - 2:13,
2:17
**STREET** [1] - 1:24
**STRIKE** [2] - 1:17, 3:6
**student** [1] - 30:3
**submitted** [4] - 8:15,
10:2, 13:5, 30:13
**substance** [1] - 9:25
**sudden** [1] - 18:8
**sued** [2] - 6:25, 28:13
**suggest** [1] - 16:21
**superior** [5] - 12:21,
12:22, 17:4, 17:5
**superiority** [2] - 27:5,
27:6
**support** [1] - 23:19

**T**

**ten** [3] - 17:1, 17:23,
22:13
**terms** [1] - 25:16
**testing** [1] - 12:16
**thanking** [1] - 22:8
**THAT** [2] - 31:12,
31:15
**THE** [80] - 2:4, 2:12,
4:4, 4:10, 4:15, 4:16,
4:25, 5:9, 5:11, 5:13,
5:17, 5:20, 5:22,
6:20, 7:3, 7:7, 7:9,
7:13, 7:16, 7:22, 8:3,
8:6, 8:9, 8:14, 8:16,
8:19, 9:3, 9:16,
10:16, 10:19, 10:22,
10:25, 11:7, 11:12,
11:23, 12:1, 12:23,
14:20, 14:23, 15:16,
15:22, 15:24, 16:10,
17:7, 17:18, 17:25,
18:23, 19:8, 19:11,
19:18, 19:21, 19:25,
20:10, 20:23, 21:1,
21:18, 22:20, 22:23,
23:3, 24:6, 24:11,
24:23, 25:2, 25:3,
26:8, 29:9, 30:9,
30:13, 31:10, 31:11,
31:13, 31:14, 31:15,
31:16, 31:17, 31:19,
31:20
**theirs** [1] - 25:15
**themselves** [2] -
12:14, 25:18
**therefore** [2] - 7:9,
16:22
**they've** [11] - 5:7, 7:5,
8:18, 9:21, 10:2,
10:4, 10:14, 20:14,
26:4, 26:5, 28:5
**third** [3] - 8:7, 13:1,
14:9
**third-party** [1] - 13:1
**THIS** [1] - 31:18
**thousands** [1] - 22:3

**three** [1] - 6:6
**threshold** [2] - 8:8, 9:24
**TITLE** [1] - 31:13
**title** [1] - 5:20
**TO** [5] - 1:16, 1:17, 3:4, 3:6, 31:12
**today** [1] - 4:19
**top** [1] - 17:1
**tox** [1] - 20:17
**transaction** [2] - 13:24, 21:11
**TRANSCRIPT** [4] - 1:15, 31:14, 31:16, 31:18
**tried** [1] - 15:10
**true** [3] - 7:14, 13:6, 26:7
**TRUE** [1] - 31:13
**trusted** [2] - 26:16, 30:6
**truth** [3] - 7:12, 20:12, 27:24
**try** [2] - 11:12, 25:5
**trying** [3] - 9:19, 19:6, 29:2
**two** [3] - 4:19, 9:7, 29:12
**TYLER** [2] - 1:17, 3:5
**type** [4] - 8:11, 8:22, 8:24, 16:15

# U

**U.S** [1] - 25:23
**ultimately** [2] - 21:10, 21:24
**under** [2] - 13:6
**UNITED** [6] - 1:1, 1:23, 31:11, 31:13, 31:17, 31:20
**Univision** [1] - 26:23
**unreadable** [1] - 29:16
**untrue** [2] - 21:6, 25:25
**up** [6] - 11:9, 16:7, 19:24, 22:10, 23:7, 28:9
**uses** [3] - 12:11, 13:20, 14:12

# V

**vagueness** [1] - 29:6
**valuable** [1] - 8:23
**value** [2] - 8:25, 14:5
**various** [5] - 8:21, 9:1, 9:14, 18:4, 27:2
**view** [1] - 18:22
**vs** [3] - 1:10, 26:24, 31:6

# W

**WAIS** [5] - 2:8, 25:5, 26:10, 29:11, 30:12
**Wais** [1] - 4:7
**wants** [1] - 6:13
**ways** [1] - 6:6
**weakened** [1] - 27:6
**web** [1] - 18:2
**Web** [25] - 5:5, 5:6, 6:8, 6:9, 6:12, 9:23, 13:20, 14:1, 14:11, 14:12, 16:6, 16:16, 17:24, 18:8, 19:4, 19:14, 21:4, 21:11, 22:6, 22:7, 29:1, 29:13, 29:17, 29:18, 30:8
**weigh** [1] - 20:6
**weight** [1] - 9:1
**WESTERN** [1] - 1:3
**whichever** [1] - 23:12
**whole** [1] - 11:19
**WINSTON** [2] - 2:13, 2:17
**WITH** [2] - 31:16, 31:19
**word** [2] - 13:20, 26:6
**words** [3] - 11:8, 13:15, 13:25
**worth** [1] - 8:25

# Y

**year** [1] - 13:15
**years** [1] - 28:15
**Yelp** [1] - 18:17
**York** [1] - 12:15

UNITED STATES DISTRICT COURT